IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATAMIZE, INC. | § | |
| Plaintiff, | § § § | |
| v. | § | 2:03-CV-321-DF |
| FIDELITY BROKERAGE SERVICES, LLC, et al., | § § § § | |
| Defendants. | § | |

## ORDER

Before the Court are Joining Defendants' Motion to Transfer (Dkt. No. 25), Datamize's Response and Sur-Reply (Dkt. Nos. 51 & 67), and Defendants' Reply (Dkt. No. 60). After having reviewed the applicable law and facts of this case, and after having conducted a hearing on this matter on March 11, 2004, for the following reasons Defendants' Motion is DENIED.

### I. BACKGROUND

This is a patent infringement case brought by Datamize, Inc., against nine Defendants. Datamize is a small, start-up company, incorporated in Wyoming with its principal place of business in Missoula, Montana. Datamize developed a software product named MyPortal™, protected by U.S. Patent Nos. 6,014,137 (the '137 patent) and 6,460,040 (the '040 patent). MyPortal allows computer users to select financial data information from both local and networked internet sources and allows users to format a portion of the information displayed on a computer screen.

Defendants are online brokerage companies that provide its customers with online trading platforms. Defendants have their principal places of business in Boston, Massachusetts, St. Louis,

Page 1 of 20

EXHIBIT 4

Dockets.Justia.c

Missouri, Greenwich, Connecticut, New York, New York, San Francisco, California, Austin, Texas, Plantation, Florida, and Chicago, Illinois, and are incorporated in Delaware, Arizona, Connecticut, California, Texas, Florida, and Illinois. Defendants' trading platforms allow their customers to select commercial financial information relevant to a customer's individual interests and format the display of the information on a computer screen. Defendants derive their revenue from fees charged their customers based on the number of trades customers place.

On May 17, 2002, Datamize filed suit against Plumtree Software, Inc., a non-party to the present case, for infringement of the '137 patent in the United States District Court of Montana. Plumtree is a Delaware corporation with its principal place of business in San Francisco, California. Plumtree sells software "enterprise portal" products to corporations for private use by corporate employees. Plumtree's portal products do not enable public commercial financial transactions. Plumtree derives revenue from its enterprise portals based on the number of employees that use its software for in house purposes versus commercial financial transactions.

In the Montana action, Plumtree filed a motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer the case to the Northern District of California. The case was referred to Magistrate Judge Leif Erickson, who on November 23, 2002, issued a Report and Recommendation to grant Plumtree's motion to dismiss.

On December 4, 2002, subsequent to the magistrate's recommendation and before the Montana district judge ruled on Plumtree's motion to dismiss, Plumtree filed an action in the Northern District of California, requesting a declaratory judgment that it does not infringe any valid and enforceable claim of the '137 patent. On July 8, 2003, the Montana district court officially adopted Magistrate Judge Erickson's findings and dismissed Datamize's action for infringement for

lack of personal jurisdiction. Subsequently, on July 17, 2003, Datamize filed its answer in the Northern District of California action and counterclaimed for infringement of the '137 patent.

Datamize filed a motion for realignment of the parties on August 7, 2003. On October 6, 2003, District Judge Vaughn Walker granted Datamize's motion finding the court had the power to realign the parties and that it was necessary to do so. Plumtree Software, Inc., v. Datamize, LLC, No. C 02-5693 VRW, at 12 (N.D. Cal. Oct. 6, 2003) [hereafter Realignment Order].

On September 5, 2003, Datamize filed the present action against Defendants for infringement of the '040 patent. The '040 patent is a "child" of the "parent" '137 patent, i.e., the application for the '040 patent was filed in the United States Patent and Trademark Office as a continuation application before the '137 patent issued. Both patents have the same priority date of February 27, 1996, which is the original filing date of the '137 patent. The '137 patent was issued on January 11, 2000, and the '040 patent was issued on October 1, 2002.

To avoid an obviousness-type double patenting rejection issued by the Patent Office, the inventor agreed to a terminal disclaimer that provided the '040 patent with the same expiration date as the '137 patent. Both patents are enforceable for 20 years from the date of filing of the '137 patent or until February 27, 2016.

In addition to their priority and expiration dates, the '137 and '040 patents share the same inventor, specification, drawings, and prosecuting attorney. The patents, however, have different claims, claim limitations, claim scopes, and prior art citations for consideration by the Court during any claim construction, infringement, or validity determinations. The claimed inventions also involve different technologies and accused products that will involve different damages theories and calculations the Court must consider.

In response to the action filed by Plaintiffs in this Court, Defendants filed their present Motion to Transfer to the Northern District of California. The issues to be considered by this Court include whether there is "substantial overlap" between the present case and the Northern District of California action, how the "first-filed" California action affects transfer to that District, and the private and public venue factors of 28 U.S.C. § 1404(a).

## II. GENERAL RULES OF LAW

The Fifth Circuit generally follows the first-to-file rule. See West Gulf Maritime Ass'n v. ILA Deep Sea Local, 751 F.2d 721, 730 (5th Cir. 1985). "The federal courts have long recognized that the principle of comity requires federal district courts--courts of coordinate jurisdiction and equal rank--to exercise care to avoid interference with each other's affairs." Id. at 728. The general principle in the interrelation of federal district courts is to avoid duplicative litigation. Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976). Federal courts should try to avoid the waste of this duplication as well as rulings that may trench upon the authority of sister courts and piecemeal resolution of issues that call for a uniform result. West Gulf Maritime Ass'n, 751 F.2d at 729.

In deciding whether to apply the first-to-file rule, the Court must resolve two questions: (1) are the two pending actions so duplicative or do they involve such substantially similar issues that one court should decide the subject matter of both actions, and if so, (2) which of the two courts should take the case. Texas Instruments v. Micron Semiconductor, 815 F. Supp. 994, 997 (E.D. Tex. 1993). "Once the likelihood of substantial overlap between the two suits has been demonstrated, it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed." Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 605-06 (5th Cir. 1999) (citing

Mann Mfg., Inc., v. Hortex, Inc., 439 F.2d 403, 407 (5th Cir. 1971)). Instead, "the proper course of action [is] for the [second-filed] court to transfer the case" to the first-filed court. Id. at 606. It is then the responsibility of the first-filed court to decide "whether the second suit filed must be dismissed, stayed, or transferred and consolidated." Sutter Corp. v. P&P Indus., Inc., 125 F.3d 914, 920 (5th Cir. 1997).

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of section 1404 is to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. In re Triton Sec. Lit., 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999).

Venue is primarily an issue of convenience. Time, Inc. v. Manning, 366 F.2d 690, 696 (5th Cir. 1966). The decision to transfer rests within the discretion of the court. Peteet v. Dow Chemical Co., 868 F.2d 1428, 1436 (5th Cir. 1989). The decision to transfer venue is an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citation omitted). In determining whether to grant a motion to transfer under section 1404(a), a district court must balance the private convenience interests of the litigants and the public interests in the fair and efficient administration of justice. In re Triton, 70 F. Supp. 2d at 688; Robertson v. Kiamichi RR Co., 42 F. Supp. 2d 651, 655 (E.D. Tex. 1999).

### III. DISCUSSION

#### A.    SUBSTANTIAL SIMILARITY AND FIRST-TO-FILE RULE

The primary issue in this case is whether the California action and the current action are "duplicative" or involve "substantially similar" issues so as to require application of the first-to-file

rule. In meeting this first requirement, it is enough that the "overall content of each suit is not very capable of independent development, and will be likely 'to overlap to a substantial degree.'" Superior Sav. Ass'n v. Bank of Dallas, 705 F. Supp. 326, 329 (N.D. Tex. 1989) (quoting Mann Mfg., 439 F.2d at 407, 408 n.6)). The cases need not be identical to be duplicative. Id. at 329.

The overlap in this case is not "substantial," otherwise requiring this Court to transfer the case to the Northern District of California because this case involves different defendants, different patent claims, different claim scopes, different accused products, and a different industry. The sole Defendant in the California action is Plumtree, who is not a co-Defendant in the present case. Defendants argue under Fifth Circuit law there is no requirement there be common defendants for substantial overlap to exist, citing Save Power Ltd. v. Syntek Finance Corp., 121 F.3d 947, 951 (5th Cir. 1997). Datamize, however, does not solely rely on the fact that different defendants exist in this case as did Save Power to argue insubstantial overlap.

In addition to different defendants, this case involves a different patent with different patent claims and claim scopes. When comparing the independent claims of the '137 and '040 patents, some notable differences exist. For instance, the independent claims of the '040 patent are more broad than those of the '137 patent. The independent claims of the '137 patent are more limited in scope as they include some important limitations not found in the '040 patent.

For example, Claim 1 of the '137 patent claims "a method for defining custom interface screens customized for individual kiosks . . . ." Claims 1, 14, and 30 of the '040 patent more generally claim a method for presenting customized assortments of information. Accordingly, Claim 1 of the '137 patent is directed more specifically to defining custom interface screens, while Claims 1, 14, and 30 of the '040 patent are more generally directed to presenting information.

Claim 1 of the '137 patent additionally requires a "master database of information," "at least one pre-defined window type," "pre-defined button type," "pre-defined multimedia type," and "button type," and "assigning of values" to "attributes" not included in Claims 1, 14, or 30 of the '040 patent. These additional terms further differentiate the claim scopes of the '137 and '040 patents and provide further evidence of insubstantial overlap between the two patents.

Defendants argue Datamize cannot deny the two patents claim the same invention because the inventor filed a terminal disclaimer in response to a Patent Office obviousness-type double patenting rejection of the '040 patent claims over the claims in the issued '137 patent. The United States Court of Appeals for the Federal Circuit, having jurisdiction of all patent appeals under 28 U.S.C. § 1295, has made clear that patent applicants do not admit to obviousness-type double patenting by filing a terminal disclaimer that gives up a portion of their patent term beyond the expiration date of the parent patent. Ortho Pharmaceutical Corp. v. Smith, 959 F.2d 936, 941 (Fed. Cir. 1992).

In other words, the Federal Circuit has rejected, in no uncertain terms, the argument that the claims of a continuation patent are obvious in light of its parent. The court in Ortho stated:

> In essence, Ortho seems to be contending that, by filing a terminal disclaimer in the '322 patent, the applicants admit not only that the '322 claims are an obvious variation of the '911 claims but, also, that they are an obvious variation of any claims in a third patent from which the '911 claims are themselves invalid for double patenting. However, the critical premise to this argument (i.e., by filing the terminal disclaimer, the '322 applicants admitted to obviousness-type double patenting) is wrong. The terminal disclaimer filed in '322 did no more than give up the portion of the patent term beyond the expiration date of the '911 patent. It did not concede double patenting with relation to any other patent.

Id.

Accordingly, the fact the inventor of the '040 patent filed a terminal disclaimer is not evidence the claims of the '040 patent are obvious in light of the claims of the '137 patent, nor is it evidence of substantial overlap of the claim scope of the patents. "It is a fundamental principle of patent law that two applications cannot claim the same invention, so it is not possible that the ['040] patent discloses any of the methods covered by the claims of the ['137] patent. While the ['040] and ['137] patents may be within the same field of technology, the claims which must be examined to determine their validity do not cover the same invention." Somafor Danek Holdings, Inc. v. U.S. Surgical Corp., 1998 U.S. Dist. LEXIS 21746, at *9-*10 (W.D. Tenn. 1998).

No substantial overlap additionally exists because different products in different industries are accused of infringing the claims of the '040 patent versus those of the '137 patent. In the California action, Plumtree's corporate portal products are alleged to infringe the claims of the '137 patent.

A corporate portal is software designed to aggregate and display information of large corporate entities on private corporate networks, such as a corporate intranet that can be accessed by the corporation's employees. The corporate enterprise portal software is used for in house purposes and not for commercial financial transactions. Plumtree therefore derives its revenue from the number software licenses granted to companies based on the number of employees that use the enterprise software.

Defendants in the present action are online brokerage companies that provide its customers with online trading platforms. Defendants' trading platforms allow their customers to select commercial financial information relevant to a customer's individual interests and format the display of the information on a computer screen. Defendants derive their revenue from fees charged their

customers based on the number of commercial trades customers place.

Defendants argue the nature of the accused products is irrelevant. Any differences in industries and product types are meaningless because the first step in any infringement analysis is interpretation of the claims at issue. Moreover, the Federal Circuit holds that "claim scope is determined without regard for the accused device." Young Dental Mfg. Co., Inc. v. Q3 Prods., Inc., 112 F.3d 1137, 1141 (Fed. Cir. 1997) (citing General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 981 (Fed. Cir. 1997)).

Claim construction is but one aspect of a patent infringement case. Defendants ignore the fact that different products involve different technology and functionality, which are two of the most dominant and time consuming components of a patent case in discovery or at trial. Different products also involve different damages theories and calculations and are but a couple examples of other time intensive components of patent cases that have little relation to claim construction.

Because different products from different industries are alleged to infringe the '137 and '040 patents, different issues are presented as to technology, infringement, and damages. These differences are further evidence of insubstantial overlap with the California action. See Square D Co. v. Medar, Inc., 1994 U.S. Dist. LEXIS 20897, *8 (D. Del. 1994) (denying motion to transfer due to no substantial overlap of technology or cases involving different products); Agere Sys., Inc. v. Broadcom Corp., 2003 U.S. Dist. LEXIS 12636 (E.D. Pa. 2003) (denying motion to transfer when patents and products were different).

Defendants argue the Court should transfer this case because based on the identical specifications of the '137 and '040 patents, similar claim construction issues and infringement and invalidity contentions will exist between the actions in California and this Court. Defendants also

argue a danger exists that the two Courts may issue inconsistent claim construction rulings and cite this Court's ruling in Medtronic Ave, Inc. v. Cordis Corp., No. 2:02-CV-73 (E.D. Tex. Mar. 19, 2003) for support.

The present case, however, involves different patents with different claims and claim scopes allegedly infringed by different products in different industries. The Federal Circuit has held that where there are even small differences in the language of claims in related patents, the claim language in each patent should be construed independently. ResQnet.com, Inc. v. LANSA, Inc., 346 F.3d 1374, 1384 (Fed. Cir. 2003) (finding the differences in claim language "significant" requiring the court to interpret "the claim anew, without regard to the interpretation" of the claims of the parent patent).

Defendants further argue this case should be transferred to the Northern District of California in light of the Federal Circuit's recent ruling in Microsoft Corp. v. Multi-Tech Sys., Inc., Nos. 03-1138, 03-1139, 2004 WL 191013 (Fed. Cir. Feb. 3, 2004). The Court in Microsoft held that prosecution history estoppel applies to the claims of a parent patent based on statements made during prosecution of a child patent. Id. at *8. Accordingly, Defendants argue the prosecution history of the '040 patent will be relevant for claim construction of the claims of the '137 patent in the Northern District of California. This argument fails because the claims of the '137 patent are not at issue in the present action. Moreover, the claims of the '040 patent have different claim scopes that will require different claim interpretations and application of different prior art for claim construction, invalidity, and infringement purposes.

Accordingly, few, if any, conflicting or overlapping rulings will occur between the two actions. Moreover, "the decision of the California court in the previous action is readily available

to this court [or vice versa] for consultation" if this Court or the Northern District of California determine a particular claim term should be construed consistently. See Somafor, 1998 U.S. Dist. LEXIS 21746, at *11-*12 (denying for similar reasons motion to transfer to Central District of California and rejecting argument that grandparent/grandchild relationship between patents would create duplicative litigation).

B.  APPLICATION OF FIRST-TO-FILE RULE

With regard to application of the first-to-file rule, this Court is not inflexible in its application of the rule. Texas Instruments, 815 F. Supp. at 997. Even though the first-to-file rule normally serves to promote efficiency and should therefore not be disregarded lightly, circumstances and modern judicial reality may periodically demand a different approach. Id. at 997 (citing Church of Scientology of Cal. v. United States Dept. of the Army, 611 F.2d 738, 750 (9th Cir.1979)). To avoid the application of the first-to-file rule, the party avoiding its application must show the existence of "compelling circumstances." See Mann Mfg., 439 F.2d at 407; Igloo Prods. Corp. v. Mounties, Inc., 735 F. Supp. 214, 217 (S.D. Tex 1990).

One such exception to the first-to-file rule is when the first-filed suit is filed in anticipation of the subsequent suit. Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th Cir. 1967). The facts indicate that Plumtree, the party to whom Defendants wish to join in the Northern District of California action, engaged in forum shopping by filing their declaratory judgment action while the Montana action was still pending.

Judge Walker in the Northern District of California expressly found that Plumtree had engaged in a blatant form of forum shopping. In his order to realign the parties, Judge Walker stated the case "does not present the usual rationale for bringing a declaratory judgment action."

Realignment Order at 8-9 (internal citations omitted). The Declaratory Judgment Act's function is to "relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure - or never." Id. (citation omitted). "Plumtree has gone to considerable lengths to deprive Datamize of its choice of forum . . . and to have [the Montana] issues tried in the Northern District of California. Accordingly, it seems equitable to allow Datamize to retain its status as plaintiff, despite the loss of its choice of forum." Id. at 11.

Transferring this case to the Northern District of California, therefore, would compound the prejudice already caused to Datamize by depriving Datamize of its choice of forum in an insubstantially similar case that involves different defendants, patent claims, claim scopes, accused products, and industry. See Villegas-Alanis v. Wurth, 2001 U.S. Dist. LEXIS 23504, at *29, *35-40 (W.D. Tex. 2001) (finding first and second-filed cases only "partially duplicative of each other" and declining to apply first-filed rule when first-filed suit was initiated in anticipation of second-filed suit).

In addition to Mann Mfg., Defendants argue various cases from this District support the proposition that second-filed actions involving child patents should be transferred to first-filed actions involving parent patents. Moreover, because parent and child patents are in the same "family" of patents, overlap of subject matter between such patents is necessarily substantial warranting transfer. In support of this argument, Defendants cite Mann Mfg., 439 F.2d at 408, Charles Hill & Assocs., Inc. v. Amazon.com, Inc., No. 2:02-CV-186-TJW (E.D. Tex. Jan. 23, 2003), Nat'l Instrument Corp. v. Software Tech., LLC, No. 2:03-CV-47-TJW (E.D. Tex. May 9, 2003), and Cal. Sec. Co-op, Inc. v. Multimedia Cablevision, Inc., 897 F. Supp. 316 (E.D. Tex. 1995). Each of

these cases involve similar parties and some of the same, if not same, patents and subject matter. These cases do not involve completely different defendants or different patent claims, claim scopes, accused products, and industry as does the present action.

Accordingly, based on the foregoing the Court finds the California action and the current action are not "duplicative" or involve "substantially similar" issues so as to require application of the first-to-file rule.

### C.   PRIVATE CONVENIENCE FACTORS OF 28 U.S.C. § 1404(a)

The party seeking transfer bears the burden of showing the convenience factors favor transfer. Manning, 366 F.2d at 698; In re Triton, 70 F. Supp. 2d at 688. Moreover, the defendant seeking transfer cannot carry this burden by making unsupported assertions, but must properly establish the relevant facts. In re Triton, 70 F. Supp. 2d at 688. The private convenience factors include: "(1) the plaintiff's choice of forum; (2) the relative ease of access to the sources of proof; (3) the cost of obtaining attendance of witnesses and other trial expenses; (4) the place of the alleged wrong; and, (5) the possibility of delay and prejudice if transfer is granted." Id.

#### 1.   Plaintiff's Choice of Forum

A plaintiff's right to choose a forum is "well-established," and his choice is usually highly esteemed. Texas Instruments, 815 F. Supp. at 996. The plaintiff's choice of a forum is "a paramount consideration in any determination of transfer request, and that choice should not be lightly disturbed." Young v. Armstrong World Indus., 601 F. Supp. 399, 401 (N.D. Tex.1984) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)).

Further, the judicial system inherently provides a plaintiff with his choice of forum:

The existence of [forum choices] not only permits but indeed invites counsel in an

adversary system, seeking to serve in his client's interests, to select the forum that he considers most receptive to his cause. The motive of the suitor in making this choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.

McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1261-62 (5th Cir.1983).

Defendants argue that because the Eastern District of Texas is not Datamize's home forum, "the usual deference accorded the plaintiff's choice is of minimal value," citing Hanby v. Shell Oil Co., 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001). In Hanby there was found to be no nexus of activity in the Eastern District of Texas where the plaintiffs had not claimed any infringing activity in the District. Datamize has made clear accusations against Defendants in the present action for patent infringement in this District. The Court thus finds the plaintiff's choice of forum factor weighs in favor of denying transfer to the Northern District of California.

2. Relative Ease of Access to the Sources of Proof

Defendants' argument that California is the more convenient forum because Datamize is currently litigating in California against Plumtree does not overcome Defendants' burden. The Court has found there is no substantial overlap between the present action and the action in the Northern District of California. Defendants are alleged to infringe the claims of the '040 patent in this District. Moreover, "the accessibility and location of sources of proof should weigh only slightly in this Court's transfer analysis, particularly since these factors have been given decreasing emphasis due to advances in copying technology and information storage." Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000); Brock v. Baskin-Robbins USA Co., 113 F. Supp.2d 1078, 1089 (E.D. Tex. 2000) ("As this Court has stated previously, when documents can be easily copied

and shipped to the Eastern District, the Court does not consider their present location 'an important factor in the transfer analysis.'") (citing In re Triton, 70 F. Supp. 2d at 690).

Defendants also argue they are not aware of any Datamize witnesses located in Texas; nor are Defendants aware of any defense witnesses located in the Eastern District of Texas. Because Defendants are unaware of any Datamize or defense witnesses located in Texas does not mean none exist. A generalized argument such as this does not overcome Defendants' burden.

Defendants argue the prosecuting attorney for both the '137 and '040 patents, who is one of only three witnesses listed in Datamize's Initial Disclosure Statement, resides in Northern California. The other two witnesses listed in Datamize's Initial Disclosure Statement are Datamize's co-founders who reside in Montana. Given Datamize has chosen this District to pursue the present action against Defendants and weight the Court affords plaintiffs with their choice of forum, the Court finds Datamize's witnesses would not be inconvenienced by having to travel to this Court.

Defendants further argue that considerable sources of prior art, such as prior art in the field of user interfaces and object-oriented programming, are certain to exist in the Northern District of California. This arguments dismisses the fact that the creation of user interfaces and object-oriented programming occurs throughout the United States and indeed the world. Moreover, any relevant prior art, whether from Silicon Valley or elsewhere, may easily be submitted to the Court given the convenience of modern-day mail and electronic services.

Defendant also argues that named Defendant Charles Schwab & Co., Inc., is headquartered in Northern California and several of the other Defendants, including E*TRADE, Instinet, Scottrade, Terra Nova Trading, and Fidelity Brokerages maintain significant offices in Northern California. Eight of the nine Defendants, however, are neither incorporated in, nor have their principal place of

business anywhere in California. These eight Defendants have their principal places of business in Boston, Massachusetts, St. Louis, Missouri, Greenwich, Connecticut, New York, New York, Austin, Texas, Plantation, Florida, and Chicago, Illinois, and are incorporated in Delaware, Arizona, Connecticut, Texas, Florida, and Illinois. Each of these locations are closer to the Eastern District of Texas than the Northern District of California.

The Court thus finds the relative ease of access to the sources of proof is satisfied by maintaining jurisdiction in the Eastern District of Texas.

    3.    The Cost of Obtaining Attendance of Witnesses and Other Trial Expenses

Defendants do not address the cost of obtaining the attendance of witnesses or the availability of compulsory process. Defendants therefore have not met their burden for this factor.

    4.    The Place of the Alleged Wrong

Defendants likewise do not address this factor. Furthermore, the alleged infringement at issue in this case takes place anywhere the Defendants' customers arguably infringe the claims of the '040 patent, including the Eastern District of Texas as asserted by Datamize.

    5.    The Possibility of Delay and Prejudice if Transfer is Granted

Datamize argues it may lose its set trial date of March 29, 2005, in the Northern District of California action if the present case is transferred to that Court. Defendants, however, argue that no delay will occur if the Court were to transfer this case to the Northern District of California. Because the California action was filed before the present action, the California case has progressed to a stage further than the present action. The present action could easily be consolidated with the case in California due to the similarity of subject matter, patents, and patent claims.

The Court finds that both actions are virtually at the same stage of litigation. The Montana District Court dismissed the Montana action on July 8, 2003, the action in this Court was filed on September 5, 2003, and the Realignment Order was issued by the Northern District of California on October 6, 2003. In addition, both actions are currently scheduled for trial in March 2005. Delay is therefore not a factor that weighs in favor of transfer and Defendants have failed to meet their burden.

Defendants further argue that prejudice will occur if a transfer is not granted due to the possibility of inconsistent rulings from two federal courts on the same issues. This inconsistency may include different claim construction rulings on the same claim terms. Moreover, transfer of this case would eliminate the progression of duplicative efforts on the part of this Court and the California Court and maximize the substantial resources already invested in the California action. Under the comprehensive Northern District of California Patent Local Rules designed to streamline complex patent litigation, substantial efficiencies will be realized by consolidation with the California action.

The Court finds no prejudice will occur if the Court denies transfer. The Court has found no substantial overlap exists between the two actions as there are different defendants, patent claims, claim scopes, accused products, and industries at issue. These differences will prevent inconsistent rulings or duplicative efforts between the two Courts. Moreover, this Court is not unfamiliar with patent infringement cases. Although the Court does not use local "patent rules" as explicitly adopted by the Northern District of California, at least similar efficiencies will be realized by maintaining the present action in the current District.

Accordingly, based on the foregoing analysis the Court finds the private interest factors weigh against transfer of the current action to the Northern District of California.

B.  PUBLIC INTEREST FACTORS OF 28 U.S.C. § 1404(a)

The public interest factors include: "(1) the relative backlog and other administrative difficulties in the two jurisdictions; (2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; (3) the local interest in adjudicating local disputes; and, (4) the appropriateness of having the case in a jurisdiction whose law will govern the dispute in order to avoid difficult problems in conflicts of laws." In re Triton, 70 F. Supp. 2d at 688.

   1.  Administrative Difficulties

The current action and the action in the Northern District of California are at similar stages of litigation. Different issues exist between the two actions as to defendants, patent claims, claim scopes, accused products, and industries. These differences will prevent inconsistent rulings or duplicative efforts between the two Courts. Because different products from different industries are alleged to infringe the '137 and '040 patents, different issues will be presented as to technology, infringement, and damages. In addition, the Court is unaware of whether the Northern District of California has acquired any special expertise with regard to the technologies or issues in dispute.

Accordingly, no administrative difficulties exist to justify the transfer of this case to the Northern District of California.

   2.  Burdens of Jury Duty, and
   3.  Local Interest in Adjudicating Local Disputes

Defendants are large financial brokerage companies that enable stock trading on a nationwide basis over the internet. Defendants collectively have a strong national presence, including in the

Eastern District of Texas where Defendants' products are accused of infringing the claims of '040 patent. As such, citizens of the Eastern District of Texas have an interest in adjudicating this dispute. See In re Triton, 70 F. Supp. 2d at 691 ("The Court finds that the citizens of the Eastern District have a substantial interest in correcting any wrongdoing on the part of companies who trade stocks on a national basis.").

Moreover, Defendants have produced no evidence to support an argument there exists any greater burden on a potential jury in the Eastern District of Texas, a lesser burden on any jury in the Northern District of California, or a greater interest in the Northern District of California to try this case.

Accordingly, the Court finds the greater interest in adjudicating this dispute lies in the Eastern District of Texas.

4. Conflicts of Laws

The parties do not contend and the Court does not find any choice of law conflicts that would arise if this case is not transferred.

Accordingly, based on the foregoing analysis the Court finds the public interest factors weigh against transfer of this case to the Northern District of California.

### III. STAY OF PROCEEDINGS

Defendants seek a limited stay pending further order of the transferee court (or this Court if the motion to transfer is denied) so that the court handling this matter can determine the most efficient manner to proceed. The Court denied Defendants' motion for stay at the March 11, 2004, hearing on Defendants' present Motion to Transfer. The parties should continue forward with all discovery under Local Rule CV-26(a) and until the parties' case management schedule is approved

by the Court.

## IV. CONCLUSION

Based on the foregoing analysis, the Court finds that transferring this case to the Northern District of California would not serve the interests of justice because there is insufficient overlap between the actions pending in this District and the Northern District of California. Although the actions involve parent and child patents having identical specifications, drawings, and inventors, the claims of the '040 patent are substantially different from the '137 patent as they are more broad than the claims of the '137 patent and have different terms and claim scopes. As a result of these differences, different defendants, different accused products, different technologies, different prior art, different claim constructions, and different industries are involved in the present action versus the action in the Northern District of California.

Datamize has chosen this forum to litigate its claims against the Defendants and the private and public interest factors of 28 U.S.C § 1404(a) weigh against transfer of this case to the Northern District of California.

The Court therefore

ORDERS that Defendants' Motion to Transfer to the Northern District of California and motion for stay is DENIED.

Defendants' Motion for a Stay of Proceedings was DENIED at the March 11, 2004, hearing and is therefore MOOT.

Signed this 22nd day of April 2004.

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE