RECEIVED-CLERK
U.S. DISTRICT COURT

2004 JUL 26 PM 8:00

TX EASTERN-MARSHALL

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

**FILED**
U. S. DISTRICT COURT
Eastern District of Texas

JUL 2 6 2004

DAVID MALAND, CLERK
By
Deputy _____

| | | |
|---|---|---|
| Compression Labs, Incorporated, | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | C.A. No. 02:04-CV-159 |
| v. | ) | |
| | ) | Judge John Ward |
| 1. Dell Incorporated, | ) | |
| 2. International Business Machines | ) | |
| Corporation, | ) | |
| 3. Toshiba America, Incorporated, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(7)**

CHICAGO 291209v3 22768-00143

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...............................................................................................................1

II. BACKGROUND ................................................................................................................1

    A.  Numerous Companies Have Recognized The Value Of The '672 Patent By
        Taking Licenses ........................................................................................................3

    B.  CLI Alone Has The Exclusive Rights To Sue And Recover For Infringement
        By The Accused Devices And To Control This Litigation.........................................3

III. ANALYSIS.........................................................................................................................5

    A.  Defendants' Motion to Dismiss Should Be Denied Because CLI's Well-
        Pleaded Allegation That It Has The Exclusive Rights To Sue And Recover
        For Infringement By The Accused Devices Must Be Accepted As True...................5

    B.  A Co-Owner Who, By Agreement With The Other Co-Owner, Has Released
        Its Right To Sue Is Not A Necessary Party................................................................6

    C.  Defendants Have Failed To Show That Any Dispute Between IBM And CLI
        Exists That Would Require The Involvement Of GI .................................................12

IV. CONCLUSION.................................................................................................................17

CHICAGO 291209v3 22768-00143

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Armstrong v. Emerson Radio and Phonograph Corp.,*
  179 F. Supp. 95 (S.D.N.Y. 1959)..............................................................................17

*Blonder-Tongue Labs., Inc. v. Univ. of Ill.*
  *Found.*, 402 U.S. 313 (1971))...................................................................................14

*Bowdoin v. Malone,*
  287 F.2d 282 (5th Cir. 1961) ......................................................................................6

*Catanzaro v. Intl'l Tel. and Tel. Corp.,*
  378 F. Supp. 203 (D. Del. 1974)..................................................................................8

*Clements v. Holiday Inns, Inc.,*
  105 F.R.D. 467 (E.D. Pa. 1984)..................................................................................6

*Continental American Corp. v. Barton,*
  932 F.2d 981 (Table), 1991 WL 66046 (Fed. Cir. 1991).............................................17

*Cooper v. Digital Processing Sys., Inc.,*
  182 F.R.D. 242 (N.D. Ohio 1998), *aff'd*, 215 F.3d 1342 (Fed. Cir. 1999)...............13

*Dunham v. Indianapolis & St. Louis R.R. Co.,*
  8 F.Cas. 44 (N.D. Ill. 1876) ......................................................................................17

*Dynatech Corp. v. Frigitronics, Inc.,*
  318 F. Supp. 851 (D. Conn. 1970)..............................................................................17

*English v. Seaboard Coast Line Railroad Co.,*
  465 F.2d 43 (5th Cir. 1972) ........................................................................................8

*Ethicon, Inc. v. U.S. Surgical Corp.,*
  135 F.3d 1456 (Fed. Cir. 1998)..............................................................................8, 12

*E-Z Bowz, L.L.C. v. Professional Prod. Research Co.,*
  No. 00-Civ-8670, WL 22064257 (S.D.N.Y. Sept. 5, 2003) ...........................9, 11, 12

*General Electro Music Corp. v. Samick Music Corp.,*
  19 F.3d 1405 (Fed. Cir. 1994)....................................................................................14

*Giese v. Pierce Chemical Co.,*
  43 F. Supp. 2d 98 (D. Mass. 1999), 5th Cir. Loc. R. 47.5.4 .......................................17

Hartley v. Mentor Corp.,
  869 F.2d 1469 (Fed. Cir. 1989)....................................................................................14

HS Resources, Inc. v. Wingate,
  327 F.3d 432 (5th Cir. 2003) ........................................................................................7

IBM v. Conner Peripherals, Inc.,
  30 U.S.P.Q.2d 1315 (N.D. Cal. 1994) ................................................................9, 10, 12

Int'l Nutrition Co. v. Horphag Research Ltd.,
  257 F.3d 1324 (Fed. Cir. 2001)....................................................................................13

Katz v. Lear Siegler, Inc.,
  909 F.2d 1459 (Fed. Cir. 1990)....................................................................................13

Michaels of Or. Co. v. Mil-Tech, Inc.,
  38 U.S.P.Q.2d 1060 (D. Or. 1995).......................................................................9, 11, 12

Morgan v. Coushatta Tribe of Indians of La.,
  214 F.R.D. 202 (E.D. Tex. 2001)..................................................................................7

Mycogen Plant Science, Inc. v. Monsanto Co.,
  252 F.3d 1306 (Fed. Cir. 2001)....................................................................................14

ii

# TABLE OF AUTHORITIES

**Page**

*PPG Indus. v. Guardian Indus. Corp.,*
   597 F.2d 1090 (6th Cir. 1979) ......................................................................................... 16

*Prima Tek II, L.L.C. v. A-Roo Co.,*
   222 F.3d 1372 (Fed. Cir. 2000)......................................................................................... 17

*Provident Tradesmens Bank & Trust Co. v. Patterson,*
   390 U.S. 102 (1968).......................................................................................................... 8

*Rawlings v. National Molasses Co.,*
   394 F.2d 645 (9th Cir. 1968) ....................................................................................... 9, 12

*Rhone-Pulenc Agro, S.A. v. DeKalb Genetics Corp.,*
   284 F.3d 1323 (Fed. Cir. 2002)......................................................................................... 17

*Schering Corp. v. Rouseel-UCLAF SA,*
   104 F.3d 341 (Fed. Cir. 1997)........................................................................................... 16

*Seagram Distillers Co. v. Alcoholic Beverages Control Comm'n.*
   401 Mass. 713 (1988) ....................................................................................................... 16

*Shering Corp. v. Roussel-UCLAF SA,*
   104 F.3d 341 (Fed. Cir. 1997)........................................................................................... 9

*SMI-Owen Steel Co., Inc. v. St. Paul Fire & Marine Ins. Co.,*
   199 F.R.D. 209 (S.D. Tex. 2001)...................................................................................... 8

Syndia Corp. v. Lemelson,
   165 F. Supp. 2d 728 (N.D. Ill. 2001) ............................................................................... 17

*Willingham, 555 F.2d 1340*................................................................................... 10, 12, 13, 14

**Statutes**
28 U.S.C. § 1404(a) ................................................................................................................ 3
35 U.S.C. § 262........................................................................................................................ 8

CHICAGO 291209v3 22768-00143

## I.    INTRODUCTION

Compression Labs, Inc. ("CLI") responds to Defendants' motion to dismiss pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure. The motion should be denied in its entirety because CLI alone has the sole, exclusive, and unrestricted right and power to litigate, license, and defend the patent-in-suit[1] in the JPEG field-of-use.

Defendants' motion to dismiss is based on the single argument that CLI has failed to join an indispensable party, namely, General Instrument ("GI"). This argument fails for two independent reasons, namely:

1.    For the purpose of ruling on a Rule 12(b)(7) motion, well-pleaded factual allegations in the complaint must be accepted as true, and thus the hundreds of pages of exhibits relied upon by Defendants in their motion are irrelevant for purposes of this motion. The arguments in Defendants' motion dissolve without the exhibits upon which they rely.

2.    Even if Defendants' exhibits are considered, Defendants have completely ignored the most recent of the series of agreements between CLI and GI regarding the '672 patent, and that agreement makes it clear beyond any doubt that GI is not an indispensable party.

## II.    BACKGROUND

This motion is just one part of an overall strategy by Defendants to deny Plaintiff its choice of forum, wrest the case away from Judge Ward, and ultimately remove this case from Texas to Delaware. On April 22, 2004, CLI filed two lawsuits in the United States District Court for the Eastern District of Texas ("the Texas suits"). The Texas suits allege infringement of U.S. Patent No. 4,698,672 ("the '672 patent") by two separate groups of defendants.

---

[1] U.S. Patent No. 4,698,672, hereafter "the '672 Patent."

1

The Texas suits were assigned case numbers 2:04-CV-158 and 2:04-CV-159 and both were initially assigned to Judge T. John Ward,[2] who subsequently recused himself from one of the cases, which was then assigned to Judge Folsom ("the Folsom case").

At the request of Defendants, CLI agreed to an extension of time for those parties to answer CLI's complaint or otherwise plead – an extension that totaled approximately 50 days, to July 6, 2004. As detailed below, instead of preparing an answer, Defendants seized upon the opportunity to construct a 234-paragraph complaint that they filed in Delaware just before their answers in Texas were due, a motion to reassign the Judge Ward case to Judge Folsom, and three separate motions to dismiss or transfer both Texas cases to their pre-selected forum in Delaware.

On May 25, 2004, Judge Ward recused himself on Civil Action No. 2:04-CV-158, retaining this Civil Action No. 2:04-CV-159 (the "Ward case"). On June 29, 2004, Defendants in this case ("the Ward Defendants") filed a motion to reassign that case to Judge Folsom.

The true intentions of the Defendants in both the Ward and Folsom cases were revealed on July 2, 2004 when most of them[3] filed a declaratory judgment action in Delaware ("the Delaware case"). Defendants' objective is clearly the avoidance of this district. The Delaware Plaintiffs seek a declaration by the Delaware court that the '672 patent is not infringed, is unenforceable, or is invalid. The Delaware Complaint lists a total of 14 separate counts, all of which relate to the '672 patent in the two Texas actions.

---

[2] Originally named defendant Adobe Systems, Inc. settled with CLI, and on June 21, 2004, CLI filed an Amended Complaint dropping Adobe as a defendant. (Ex. 1.) Consistent with CLI's exclusive right to control this litigation and to license the '672 patent in the JPEG field-of-use, the co-owner of the '672 patent, GI, was not involved in any way in the settlement with Adobe.

[3] All but six of the defendants in the Ward and Folsom cases joined as plaintiffs in the Delaware case, i.e., Concord Camera, Creative Labs, Kyocera Wireless, Onkyo, Panasonic Communications, and Panasonic Mobile Communications. Concord Camera and Creative Labs filed a separate motion to dismiss or transfer. The motion adopts the analysis advanced by the other defendants' motion to dismiss pursuant to Rule 12(b)(7), but declines to adopt their 1404(a) analysis.

On July 6, 2004, the Folsom Defendants filed a motion to dismiss the Folsom case, based on a purported failure by CLI to join an indispensable party, General Instrument ("GI"). In that motion, the Folsom defendants also asked in the alternative that Judge Folsom transfer that case to Delaware, pursuant to 28 U.S.C. § 1404(a), citing what they called the "earlier filed" Delaware declaratory judgment action. This, despite the fact that the Delaware case was filed 71 days after CLI commenced litigation against Defendants in this district. On that same date, the Ward Defendants filed, in lieu of an answer, a motion to dismiss the Ward case.

Both the Ward and Folsom Defendants could have addressed their alleged concern about the absence of GI by seeking to have GI joined in the Texas cases. Instead, the defendants seek dismissal or transfer of the Texas cases altogether in order to force CLI to litigate its case in a forum not of its choosing.

## A.    Numerous Companies Have Recognized The Value Of The '672 Patent By Taking Licenses

The '672 patent describes and claims a compression technique used in the JPEG standard, a digital-image compression standard that was promulgated years after the '672 patent issued. Before CLI initiated the present litigation, dozens of companies had already recognized the value of the '672 patent by obtaining licenses from CLI to use the '672 invention in the JPEG field-of-use. One of the originally named defendants, Adobe Systems, Inc., has also recognized the value of the '672 patent and settled with CLI within months after CLI filed its Complaint.

## B.    CLI Alone Has The Exclusive Rights To Sue And Recover For Infringement By The Accused Devices And To Control This Litigation

Defendants' entire "failure to join indispensable party" argument is based on an incomplete set of agreements. The most recent agreement setting forth CLI's rights and interests in the '672 patent on the date the Texas cases were filed is a 2003 agreement never mentioned in

3

Defendants' motions. That agreement attached hereto as Exhibit 2 and clearly supports the allegations in Plaintiff's Complaint, which for purposes of Rule 12 motions must be accepted as true in any event.

CLI's Complaint alleges that "CLI is an owner of the '672 patent and, pursuant to an agreement with its co-owner, has the exclusive rights to sue and recover for infringement thereof with respect to the Accused Devices, as hereinafter defined." (Ex. 3, ¶ 34.) CLI's Complaint defined "Accused Devices" as "devices, at least portions of which are designed to be at least partly complaint with the JPEG standard . . . ." (*Id.* ¶ 35.) The exclusivity of CLI's rights to sue and recover for infringement was confirmed by an agreement between Forgent Networks, Inc. ("Forgent") and its wholly-owned subsidiary, CLI, and Motorola, Inc., the parent of General Instrument Corp. ("GI"), dated December 9, 2003 ("the 2003 Agreement") (Ex. 2). Article 4 of the 2003 Agreement confirms several important exclusive rights of CLI with respect to the JPEG field-of-use. First, it confirms that CLI has the sole, exclusive and unrestricted right and power to sue third parties that use the JPEG standard and defend against any action involving JPEG. Second, if CLI sues or is sued, the 2003 Agreement confirms that CLI has the sole, exclusive, and unrestricted right and power to control such litigation involving JPEG. Finally, it confirms that CLI has the full sole, exclusive, and unrestricted right and power to license the '672 patent in the JPEG field-of-use. These and other rights are expressed in Article 4 of the 2003 Agreement relating to "Control of Litigation":

> **Article 4 – Release of MPEG-4 rights; Control of Litigation by Grantor, etc.**
>
> * * *
>
> 4.2    Licensee and its subsidiaries, **including GI**, hereby conveys, grants, assigns and otherwise **releases** to Grantor [Forgent and CLI] the **sole, exclusive and unrestricted right and power to enforce, by licensing, litigation or otherwise, the Jointly Owned Patents in the JPEG Standard field of use** from time to time, **and to defend any action or actions, involving such field of**

4

**use**, without any accounting to or other rights of Licensee, GI or their respective subsidiaries and agree to execute such other documents as may be reasonably required from time to time by Grantor to make, in Grantor's sole judgment, the foregoing efficient and effective. Further, Licensee, on behalf of itself and on behalf of its subsidiaries, including GI, hereby agrees that **Grantor shall have the full sole, exclusive and unrestricted right and power to license third parties and to initiate, control and pursue to judgment or settlement** one or more actions under the Jointly Owned Patents, at Grantor's sole cost and expense, based upon the infringement thereof with respect to all fields of use, except the Broadcast Business and the MPEG-4 field of use, and the recovery or recoveries from such actions, whether by settlement or judgment, shall inure solely to the benefit of Grantor; and Licensee, GI and its subsidiaries shall have no interest in any such settlements or recoveries.

(Ex. 2,[4] at 8-9 (emphasis added).) The 2003 Agreement was executed by GI "for purposes of confirming its agreements in Article 4 hereof." (*Id.* at 21.)

### III.    ANALYSIS

Defendants' motion to dismiss is based on the false premise that GI is a necessary and indispensable party because GI has the right to impede CLI's ability to sue for infringement of the '672 patent by refusing to voluntarily join in the suit. However, Defendants' motion and argument completely ignore the above-mentioned 2003 Agreement between CLI and GI regarding the '672 patent. This agreement makes it clear that GI is not a necessary or indispensable party, and that CLI alone has the full, sole, exclusive, and unrestricted right and power to sue and recover for infringement of the '672 patent in the JPEG field-of-use, as properly alleged by CLI in the complaint in this action.

### A.    Defendants' Motion to Dismiss Should Be Denied Because CLI's Well-Pleaded Allegation That It Has The Exclusive Rights To Sue And Recover For Infringement By The Accused Devices Must Be Accepted As True

Defendants' motion to dismiss should be denied for several reasons, the first of which is that CLI's well-pleaded allegation in its Complaint that it has the exclusive right to sue must be

---

[4] Because no protective order has been entered in this case yet, Exhibit 2 is a redacted version of the 2003 Agreement, whose provisions are confidential with the exception of Article 4.

accepted as true. "For the purpose of ruling on a Rule 12(b)(7) motion, well-pleaded factual allegations in the complaint are accepted as true." *Clements v. Holiday Inns, Inc.*, 105 F.R.D. 467, 469 (E.D. Pa. 1984); *see also Bowdoin v. Malone*, 287 F.2d 282, 286 (5th Cir. 1961). CLI's Complaint alleges that "CLI is an owner of the '672 patent and, pursuant to an agreement with its co-owner, has the **exclusive rights** to sue and recover for infringement thereof with respect to the Accused Devices, as hereinafter defined." (Ex. 3, ¶ 9 (emphasis added).) Accepting this allegation as true, GI cannot be even a necessary party because it has no right to sue or recover for infringement of the '672 patent with respect to the Accused Devices. Accordingly, the motion to dismiss should be denied on this basis alone.

Ignoring the standard for deciding a motion to dismiss, Defendants attach hundreds of pages of exhibits hoping to cast doubt on this well-pleaded allegation.[5]  In their zeal to persuade this Court that CLI does not have the exclusive rights it alleges it has, Defendants either overlooked or consciously ignored, during the course of their Rule 11 investigation, the most recent agreement between CLI and GI.[6]  This 2003 Agreement provides another basis for denying Defendants' motion to dismiss, as discussed next.

**B.      A Co-Owner Who, By Agreement With The Other Co-Owner, Has Released Its Right To Sue Is Not A Necessary Party**

Defendants' motion to dismiss is based entirely on the false premise that GI has the right to impede CLI's ability to sue infringers who practice the JPEG standard by refusing to

---

[5] One of the exhibits to Defendants' motion attaches a copy of the June 24, 1996 License and Co-Ownership Agreement between CLI and GI, which is prominently stamped "Confidential." Neither Defendants' motion nor any of the exhibits were filed under seal, and no protective order has been entered in this case. CLI hopes that this apparent disregard for the confidential information of CLI and a non-party is not an indication of how such information will be treated by Defendants in the future.

[6] Defendants' apparent casualness that led them to move to dismiss in reliance on an incomplete set of agreements, without so much as a call to CLI's counsel to verify the status of the Confidential 1996 Co-Ownership Agreement in their possession, has caused needless delay and multiplied these proceedings, and has caused CLI to expend significant resources responding to Defendants' repeated and calculated attempts to deny CLI its choice of forum.

6

voluntarily join in this lawsuit. Because GI, by agreement, released to CLI the right to sue infringers who practice the JPEG standard, GI has contracted away its right to impede CLI's prosecution of this lawsuit or to protest any adverse judgment against CLI.

Defendants must overcome two hurdles in order to prevail on their motion to dismiss. First, they must establish that GI is a necessary party under Rule 19(a) of the Federal Rules of Civil Procedure and that joinder of GI is not feasible. *Morgan v. Coushatta Tribe of Indians of La.*, 214 F.R.D. 202, 205 (E.D. Tex. 2001). If Defendants successfully surmount this threshold requirement, they must further establish that GI is "indispensable" under Rule 19(b). *Id.*; *see also HS Resources, Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003) ("if such joinder would destroy the court's jurisdiction, then the court must determine under Rule 19(b) whether to press forward without the person or to dismiss the litigation."). If, however, GI does not qualify as a necessary party under Rule 19(a), the court need not decide whether GI's absence would warrant dismissal under Rule 19(b). *English v. Seaboard Coast Line Railroad Co.*, 465 F.2d 43, 48 (5th Cir. 1972); *SMI-Owen Steel Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 199 F.R.D. 209, 212 (S.D. Tex. 2001).

Here, Defendants fall short of the first hurdle, because GI's release to CLI of all rights to sue, license, defend, and recover for infringement based on the JPEG standard disqualifies GI as a necessary party under Rule 19(a).

Defendants argue that GI is a necessary party because it is a co-owner without which this action cannot be maintained. As an initial matter, just because GI is a co-owner does not mean it is *per se* an indispensable party here. The adoption of the 1966 amendments to Rule 19 "makes inappropriate any contention that patent co-owners are *per se* indispensable parties in infringement suits." *Catanzaro v. Intl'l Tel. and Tel. Corp.*, 378 F. Supp. 203, 205 (D. Del. 1974) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)).

7

The principles governing the rights of co-owners of a patent are well established. While ordinarily each co-owner has the rights to freely make, use, offer to sell, sell, and license the patented invention without the consent of any other co-owner, co-owners are free to alter or modify these rights by agreement. 35 U.S.C. § 262; *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 n.9 (Fed. Cir. 1998); *Shering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344 (Fed. Cir. 1997) (quoting 35 U.S.C. § 262); *Willingham v. Lawton*, 555 F.2d 1340, 1345 (6th Cir. 1977) ("35 U.S.C. § 262, the only statutory section dealing with joint ownership of patents, specifically allows joint owners to change the relationship among themselves by agreement."); *IBM v. Conner Peripherals, Inc.*, 30 U.S.P.Q.2d 1315, 1319 (N.D. Cal. 1994) (attached as Ex. 4) ("Co-owners may avoid 'the inconvenience or undesirability of the joinder rule by structuring their interests so that one party is no longer in law an 'owner.'"). When they do so in a manner that bestows in one co-owner the exclusive right to sue for infringement, the absent co-owner is <u>not</u> an indispensable party. *Rawlings v. National Molasses Co.*, 394 F.2d 645 (9th Cir. 1968); *E-Z Bowz, L.L.C. v. Professional Prod. Research Co.*, No. 00-Civ-8670, 2003 WL 22064257 (S.D.N.Y. Sept. 5, 2003) (attached as Ex. 5); *Michaels of Or. Co. v. Mil-Tech, Inc.*, 38 U.S.P.Q.2d 1060, 1062 (D. Or. 1995) (attached as Ex. 6); *IBM*, 30 U.S.P.Q.2d at 1320 (Ex. 4). By releasing its right to sue, the absent co-owner "waive[s] protection of the two interests it had in preventing an infringement suit on its patent without its voluntary joinder in the action." *Willingham*, 555 F.2d at 1345. The two interests of a co-owner are (1) the ability to license without harassing suits by other co-owners and (2) avoiding the estoppel effect of a judgment declaring the patent invalid in which the co-owner did not participate. *Id.* at 1344.

GI is not a necessary party in this case because GI released to CLI the "sole, exclusive and unrestricted right and power" to enforce, by licensing, litigation or otherwise, the '672 patent in the JPEG field-of-use, and to defend any action involving such field-of-use without any

8

accounting to or other rights of GI. (Ex. 2, Art. 4.2.) This release completely deprived GI of any right to sue anyone for infringement based on the JPEG Standard and to control or direct any aspect of this litigation in any manner. The case law is clear that such a release disqualifies the absent co-owner as a necessary or indispensable party under Rule 19.

IBM, one of the Defendants making the present Motion, tried and failed to dismiss for non-joinder of a co-owner as an indispensable party in a case nearly identical to this one. In *IBM v. Conner Peripherals*, Conner was a co-owner with Alps of a patent asserted against IBM. 30 U.S.P.Q.2d 1315 (Ex. 4.) The co-owners entered into a side agreement, which granted to Conner, *inter alia*, the "exclusive rights" to grant licenses, enforce and manage litigation, and receive payments. *Id.* at 1316. Thus, according to the side agreement, "Alps has no right to sue any infringers and cannot make Conner sue infringers. Alps does not have the right to sue an infringer even if Conner refuses to do so." *Id.* at 1320. Because Alps had no right to sue, the court did "not find Alps to be a necessary party because IBM does not face a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *Id.*

Likewise in *E-Z Bowz v. Professional Product Research*, Slater assigned to co-owner E-Z Bowz her "entire right, title and interest" in the patents-in-suit after litigation had commenced. 2003 WL 22064257, at *2 (Ex. 5). The court rejected the defendant's argument that all co-owners must be joined as indispensable plaintiffs, noting that since the 1966 amendments to Rule 19, "courts are less concerned with abstract characterizations of the parties and more concerned with whether the rights of the parties can be fairly adjudicated absent joinder of a patent co-owner." *Id.* at *3 (quoting *Michaels*, 30 U.S.P.Q.2d at 1061). The court held that not a single requirement of Rule 19(a) was met by Slater's absence, concluding that "[n]othing in the language of Rule 19 suggests that Slater's subsequent assignment requires that she be dragooned into being part of a litigation in which she has disclaimed all interest." *Id.* at *4.

9

A co-owner in *Michaels v. Mil-Tech* was not an indispensable party because it had released to the other co-owner the exclusive right to sue for infringement and thus had no independent capacity to sue. 38 U.S.P.Q.2d 1060 (Ex. 6). The agreement even required the absent co-owner, Bianchi, to join voluntarily as a plaintiff, which it refused to do, but the court found this requirement irrelevant to its Rule 19 analysis. *Id.* at 1062. Like the court in *E-Z Bowz*, the court in *Michaels* found none of the requirements of Rule 19(a) satisfied, and denied the motion to dismiss for failure to join an indispensable party.

Like Alps in *IBM v. Conners*, Slater in *E-Z Bowz*, and Bianchi in *Michaels*, GI has disclaimed and released to CLI all interest in this litigation as confirmed by the 2003 Agreement between CLI and Motorola. GI cannot sue the defendants for infringement as pled in CLI's Complaint, even if CLI refused to do so, nor could GI have forced CLI to sue them. By releasing all rights to sue for infringement in the JPEG field-of-use, GI has waived protection of any interest to license in the JPEG field-of-use and to avoid the estoppel effect of any adverse judgment. *Willingham*, 555 F.2d at 1345. Because GI has no capacity to sue any of the defendants for products implementing the JPEG Standard, there is no risk that defendants will incur double, multiple, or otherwise inconsistent obligations. *See Rawlings*, 394 F.2d at 647; *E-Z Bowz*, 2003 WL 22064257, at *4; *IBM*, 30 U.S.P.Q.2d at 1320. Indeed, GI's interest in this case is even more remote than those of the absent co-owners in *IBM*, *EZ-Bowz*, and *Michaels*, in that GI has released to CLI not only its right to sue, but also its right to control any aspect of this litigation. In short, GI has absolutely <u>no interest whatsoever</u> to protect in this litigation. For these reasons, GI is not a necessary party under Rule 19(a), and therefore cannot be an indispensable party under Rule 19(b).

Defendants rely on *Ethicon*, 257 F.3d 1324, to argue that even if an agreement exists whereby co-owners grant each other the unilateral right to sue, CLI cannot maintain this action

10

without the participation of GI. This argument is flawed for two reasons. First, CLI and GI have

not granted each other the unilateral right to sue in the JPEG field-of-use. Rather, as the 2003

Agreement makes clear, CLI and CLI alone has the right to sue for infringement in the JPEG

field-of-use. Thus, GI does not have *any* right to sue for infringement by the Accused Devices.

Second, as the court in *Michaels* explained, even if GI were to have retained a right to join in any

action with CLI, which it did not, such a right would be irrelevant to whether GI is an

indispensable party here. *Michaels*, 38 U.S.P.Q.2d at 1062. *Ethicon* and other cases cited by

Defendants[7] are simply inapplicable here because CLI has the sole, exclusive and unrestricted

right and power to sue for infringement by the Accused Devices as defined in CLI's Complaint,

a situation not present in Defendants' cited cases.

Finally, Defendants erroneously rely on *Willingham v. Star Cutter*, 555 F.2d 1340, in

support of their argument that GI's absence would prejudice its interests in protecting its

licensing rights and in avoiding a judgment of invalidity or unenforceability.[8] On the contrary,

---

[7] *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324 (Fed. Cir. 2001) (neither co-owner had exclusive right to sue for infringement); *Schering*, 104 F.3d at 342 (co-ownership agreement did not give one co-owner the exclusive right to sue); *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) (joinder appropriate to avoid possible injury to licensee arising out of dispute between assignee and licensee concerning beneficial interests in a patent); *Willingham*, 555 F.2d 1340 (co-owners granted each other unilateral right to sue); *Cooper v. Digital Processing Sys., Inc.*, 182 F.R.D. 242 (N.D. Ohio 1998), *aff'd*, 215 F.3d 1342 (Fed. Cir. 1999) (agreement silent as to ownership of the rights to sue).

[8] Any adverse judgment of invalidity would collaterally estop relitigation of any claims found invalid. "It is undisputed that as a result of collateral estoppel, a judgment of invalidity in one patent action renders the patent invalid in any later actions based on the same patent." *Mycogen Plant Science, Inc. v. Monsanto Co.*, 252 F.3d 1306, 1310 (Fed. Cir. 2001), *vacated and remanded on other grounds*, 535 U.S. 1109 (2002) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 349-50 (1971)). Moreover, under *Blonder-Tongue*, "mutuality of estoppel or privity is not required for a third party to invoke collateral estoppel . . . with respect to a determination of patent invalidity in prior litigation." *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1470-71 (Fed. Cir. 1989). Likewise, "[t]he principle of *Blonder-Tongue Labs., Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, 169 USPQ 513 (1971), respecting collateral estoppel also applies to unenforceability." *General Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1413 (Fed. Cir. 1994).

*Willingham* says precisely the opposite. The co-owners in *Willingham* had granted each other the "unilateral right" to sue an infringer.[9] *Willingham*, 555 F.2d at 1345. The court concluded:

> We interpret this clause as a waiver by both co-owners of any right to protect the adverse consequences that could enure [sic] to his or its detriment from a suit initiated by the other co-owner. A co-owner who grants another owner a right to bring litigation in his "sole discretion" should not be allowed to argue later that such litigation should be precluded on the ground that it is detrimental to his interests in the patent. **We conclude that Star, as a co-owner, waived protection of the two interests[10] it had in preventing an infringement suit on its patent without its voluntary joinder in the action.**

*Id.* (emphasis added). Here, not only has GI released to CLI the exclusive right to sue and defend any litigation involving JPEG and to license in the JPEG field-of-use, GI has also released to CLI the full sole, exclusive and unrestricted right and power to <u>control</u> such litigation. Thus, even if GI were to have any interest to protect, it has expressly waived them and relinquished all control over protecting such interests to CLI exclusively. Accordingly, Defendants' own authority compels a denial of their motion to dismiss.

### C.    Defendants Have Failed To Show That Any Dispute Between IBM And CLI Exists That Would Require The Involvement Of GI

Defendants also attempt to claim that GI is a necessary party in order to resolve an alleged dispute between CLI and one of Defendants, IBM, regarding a license agreement between IBM and GI's parent company, Motorola (the "IBM Agreement"). The IBM Agreement is dated September 30, 1991, nearly five years before GI entered into any patent agreements with CLI, and nearly ten years before Motorola merged with GI. According to the

---

[9] Because both co-owners each had the unilateral right to sue, the court concluded "under the facts of the present case" that involuntary joinder of the unwilling co-owner was proper. *Id.* at 1346. However, in this case, no such mutuality exists. Here, <u>only</u> CLI has the exclusive right not only to bring this lawsuit but also to defend, control, and settle it.

[10] The two interests that are waived, the *Willingham* court explained, are the identical interests identified by Defendants in their Motion: "(1) the interest of a co-owner in being able to license third parties under his or her patent without harassing suits by other co-owners; (2) the interest of a co-owner in avoiding the estoppel effect of a judgment declaring the patent invalid in which he or she did not participate . . . ." *Willingham*, 555 F.2d at 1344.

Defendants, IBM acquired a license to practice the '672 patent in the JPEG field when Motorola merged with GI on January 5, 2000, because the definition of "Licensed Patents" in the IBM Agreement includes "patents . . . under which . . . [Motorola] or any of its Subsidiaries now has, or hereafter obtains, the right to grant licenses to [IBM] of or within the scope granted herein . . . ." (Albritton Decl., Att. H, p.3, ¶1.7.)

GI, however, is not a party to the IBM Agreement. Although Motorola acquired the stock of GI, GI remained a separate legal entity with separate legal ownership of its patent licenses. *See Institut Pasteur v. Cambridge Biotech Corp.,* 104 F.3d 489, 494 (1st Cir. 1997) (explaining that the sale of all of a company's stock does not effect a transfer of its patent licenses) (citing *Seagram Distillers Co. v. Alcoholic Beverages Control Comm'n.* 401 Mass. 713 (1988) and *PPG Indus. v. Guardian Indus. Corp.,* 597 F.2d 1090, 1096 (6th Cir. 1979)). The only way IBM could have received any rights under the '672 patent would be from Motorola, and the only way Motorola could receive such rights would be through an assignment or license from GI. Defendants have offered no evidence that GI ever granted any rights under the '672 patent to Motorola. Motorola received a license under the '672 patent from CLI on December 9, 2003, but that license was provided "without the right to sublicense." (Ex. 2 at 6, ¶ 3.1.) Consequently, Defendants have failed to show that IBM has any potential license under the '672 patent, let alone that would require the presence of GI to resolve.

Furthermore, even if GI had conveyed its rights under the '672 patent to Motorola, any license that IBM received from Motorola would be limited to the scope of the license that GI was entitled to grant, which did not include the JPEG field. (*See* Defs.' Mot. at 9; Albritton Decl., Att. H, p. 9, 2.1.) As Defendants concede, under the patent statute a co-owner such as GI may give up the right to exploit its rights in a patent, including the right to grant licenses to third parties. Defs.' Mot. at 12 (citing *Schering Corp. v. Rouseel-UCLAF SA,* 104 F.3d 341, 344 (Fed.

13

Cir. 1997)); 35 U.S.C. § 262. In this case, the agreements between CLI and GI and its predecessors clearly provide that GI gave up its rights in the JPEG field. As it is "well established . . . that a joint owner of a patent cannot grant to a third party greater rights than the joint owner himself possessed," *Continental American Corp. v. Barton*, 932 F.2d 981 (Table), 1991 WL 66046, *1 (Fed. Cir. 1991) (citing *Dunham v. Indianapolis & St. Louis R.R. Co.*, 8 F.Cas. 44 (N.D. Ill. 1876)) (attached hereto as Ex. 7),[11] GI could not license any right to practice the '672 patent in the JPEG field. For this reason, Motorola was forced to obtain a license directly from CLI in December 2003. If GI could not license the '672 patent to Motorola, Motorola certainly could not license the '672 patent to IBM.

There were four agreements made between CLI and GI and its predecessors relating to the parties' rights in the '672 patent:

(i) a License And Co-Ownership Agreement dated June 24, 1996, between CLI and Charger Industries, Inc. ("Charger"), a corporate predecessor to GI (the "1996 Agreement");

(ii) an Amendment To License And Co-ownership Agreement dated July 1, 1997, between CLI and Magnitude Compression Systems, Inc. ("Magnitude"), formerly named Charger (the "1997 Agreement");

(iii) an Agreement Relating To License And Co-Ownership Agreement dated January 25, 2002, between Forgent Networks, Inc. ("Forgent"), which had acquired CLI, and GI[12] (the "2002 Agreement"); and

---

[11] Although *Barton* is an unpublished opinion, it may be cited as persuasive authority, *Giese v. Pierce Chemical Co.*, 43 F. Supp. 2d 98, 104 n.1 (D. Mass. 1999), 5th Cir. Loc. R. 47.5.4, and states a general principle of patent law in any event. *See Syndia Corp. v. Lemelson*, 165 F.Supp.2d 728, 748-49, 753 (N.D. Ill. 2001) (where defendant had given up the right to use the patent, it could not license that right to others, even if theoretically it had the "power" to do so); *accord Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1382 (Fed. Cir. 2000); *Dynatech Corp. v. Frigitronics, Inc.*, 318 F. Supp. 851, 853 (D. Conn. 1970); *Armstrong v. Emerson Radio and Phonograph Corp.*, 179 F. Supp. 95, 128 (S.D. N.Y. 1959). *See also Rhone-Pulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1330 (Fed. Cir. 2002) (holding that there is no bona fide purchaser rule in patent licensing, and that a patent licensee can receive only those rights that were authorized to be transferred).

[12] Magnitude merged into GI and was no longer an entity around about January 16, 2001. (Casino Decl., Ex. I, p.1, ¶ 2.)

14

(iv) a Fully-Paid License Agreement dated December 9, 2003, between Forgent, CLI, and Motorola (the "2003 Agreement"), to which GI is also a party.[13]

In the 1996 Agreement, CLI assigned to Charger an undivided interest in several patents, including the '672 patent, that were "subject to the field-of-use restrictions set forth in Section 2.2." (Albritton Decl., Att. B, p.2, ¶ 2.1.)[14]  The field-of-use restrictions provided that Charger's rights under the covered patents were limited to "the broadcasting business as it has historically been conducted by CLI and as such business evolves in the future" (id.), which the parties reiterated in the 1997 Agreement, (Albritton Decl., Att. F, p. 2, ¶ 2.1), and confirmed in the 2002 Agreement did not include the JPEG field.  (Albritton Decl., Att. I., pp. 1-2, ¶¶ 3, 4, 7.)  CLI had the exclusive right to practice and license the covered patents, including the '672 patent, in fields, including the JPEG field, outside of Charger's broadcasting business.  (Albritton Decl., Att. B, p.2, ¶ 2.1, Att. F, p. 2, ¶ 2.1, Att. I, pp. ¶¶ 3, 4, 7.)[15]  Thus, only CLI could grant any license under the '672 patent in the JPEG field, and any license by GI purporting to grant such rights would be ineffective and void.

Defendants concede that the 1996 Agreement prohibited GI from practicing the '672 patent in the JPEG field, but attempt to argue that GI somehow remained free to license others to use the patent in that field.  As discussed above, this argument rests on a false premise, that GI

---

[13] Motorola acquired GI in January 2000. (Albritton Decl., Att. G.)

[14] This is consistent with the Patent Assignment filed with the PTO, which indicates that the parties' respective interests were governed by the 1996 Agreement. (Albritton Decl., Att. C. p. 4.) Due to a typo, the word "Marks" was used instead of "Patents."

[15] This is consistent with the 2003 Agreement, which also confirms that CLI has "the sole, exclusive and unrestricted right and power to enforce, by licensing, litigation or otherwise, the Jointly Owned Patents in the JPEG Standard field of use . . . ." (Ex. 2, p. 8, ¶ 4.2.)

15

could license a right which it itself did not possess.[16]   It is also contrary to the understanding of the parties, for in the 2002 Agreement, GI expressly "acknowledged and confirmed" that CLI alone had the exclusive right to license the '672 patent in the JPEG field, and that neither GI nor its predecessors Charger and Magnitude ever had any such right. (Albritton Decl., Att. I, ¶¶ 3, 4, 7.) Defendants attempt to dismiss the 2002 Agreement by alleging that IBM received a license before it was executed, but this misses the point. The 2002 Agreement did not alter or amend the parties' relationship created by the 1996 Agreement, but served to acknowledge and confirm the parties pre-existing rights with regards to the JPEG field. Specifically, GI confirmed that it never had any right to practice or license the '672 patent in the JPEG field under the 1996 Agreement, which flatly contradicts Defendants' interpretation of that agreement.

It also ignores the 1997 Agreement, in which CLI authorized GI to license the '672 patent in the MPEG-2 field (Casino Decl., Att. H, p.2, ¶ 2.2), which would have been unnecessary if, as Defendants claim, GI had the "unlimited" right to license the '672 patent in all fields of use all along. And it ignores the 2003 Agreement, in which CLI granted a license to practice the '672 patent in the JPEG field to GI's parent, Motorola (Ex. 2 at 6, ¶ 3.1), which would have been unnecessary if GI had the power to grant such a license to Motorola itself. Defendants' strained interpretation of the parties' respective rights in the '672 patent is contradicted by the express agreements of the parties themselves regarding their rights.

In their haste to escape this district, Defendants have ignored or mischaracterized key provisions in the parties' agreements in an attempt to show that GI has rights which GI itself has

---

[16] *See supra* n.12 and accompanying text. Defendants' argument regarding Section 2.2 of the 1996 Agreement is therefore misplaced, because it is in Section 2.1 of the agreement that the parties agreed to limit their right to practice the '672 patent, which in turn controls their ability to license such a right to others. Section 2.2 confirms, however, that the parties intended to limit their ability to license the '672 patent to defined fields of use (and to provide notice to potential infringers of the limit to any license that was granted).

agreed that it does not possess. Defendants' attempts to manufacture a dispute in order to escape this Court should be rejected.

## IV.    CONCLUSION

For the reasons given above, CLI submits that Defendants' motion to dismiss should be denied.

Respectfully submitted,
Compression Labs, Inc.

Dated:  July 26, 2004

By: *Stephen Rudisill by SCC by permission*

Stephen G. Rudisill (*attorney-in-charge*)
    Illinois Bar No.: 2417049
    Texas Bar No.: 17376050
    srudisill@jenkens.com
John C. Gatz
    Illinois Bar  No.: 6237140
    jgatz@jenkens.com
Russell J. Genet
    Illinois Bar No.:6255982
    rgenet @jenkens.com
Justin D. Swindells
    Illinois Bar No.: 6257291
    jswindells@jenkens.com
JENKENS & GILCHRIST, P.C.
225 West Washington Street, Suite 2600
Chicago, Illinois  60606
Tel.   (312) 425-3900
Fax   (312) 425-3909

S. Calvin Capshaw III
    Texas Bar No.: 03783900
    ccapshaw@mailbmc.com
BROWN, McCARROLL, L.L.P.
1127 Judson Road, Suite 220
Longview, Texas  75601-5157
Tel.   (903) 236-9800
Fax.  (903) 236-8787

17

Franklin Jones, Jr.
        Texas Bar No.: 00000055
        maiezieh@millerfirm.com
JONES & JONES, Inc., P.C.
201 West Houston Street (75670)
P.O. Drawer 1249
Marshall, Texas 75670-1249
Tel.    (903) 938-4395
Fax.    (903) 938-3360

Otis Carroll
        Texas Bar No.: 03895700
Jack Wesley Hill
        Texas Bar No.: 24032294
        nancy@icklaw.com
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway, Suite 500
Tyler, Texas 75703
Tel.    (903) 561-1600
Fax.    (903) 581-1071

Carl R. Roth
        Texas Bar No.: 17312000
        cr@rothfirm.com
Michael C. Smith
        Texas Bar No.: 18650410
        ms@rothfirm.com
THE ROTH LAW FIRM
115 North Wellington, Suite 200
P.O. Box 876
Marshall, Texas 75670
Tel.    (903) 935-1665
Fax    (903) 935-1797

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of July, 2004, a true and correct copy of the foregoing document was deposited in the United States Mail, postage prepaid, and addressed to the following counsel of record:

Dell Incorporated
Willem G. Schuurman
David B. Weaver
Vinson & Elkins, LLP
2801 Via Fortuna
Suite 100
Austin, TX 78746

Mark N. Reiter
Daniel T. Conrad
Jones Day
2727 North Harwood Street
Dallas, TX 75201

International Business Machines Corporation
Mark N. Reiter
Daniel T. Conrad
Jones Day
2727 North Harwood Street
Dallas, TX 75201

Toshiba America, Incorporated
Henry C. Bunsow
Howrey Simon Arnold & White
525 Market Street
Suite 3600
San Francisco, CA 94104

S. Calvin Capshaw