# EXHIBIT 1

Dockets.Justia.c

**AFFIDAVIT**

COMMONWEALTH OF PENNSYLVANIA    §
                                                            §
COUNTY OF _MONTGOMERY_    §

To all interested Courts, agencies and other parties:

BEFORE ME, the undersigned authority, on this date personally appeared _Daniel M. Moloney_____, known to me to be a credible person, who stated under oath the following:

1.    My name is _Daniel M. Moloney_. I am _President + CEO_____ of General Instrument Corporation, a Delaware corporation, hereinafter referred to as "GI," having its principal office and place of business located at 101 Tournament Drive, Horsham, Pennsylvania 19044. I have personal knowledge of the facts and statements contained herein and am duly authorized to make this Affidavit on behalf of GI.

2.    GI formerly held an undivided one-half interest in U.S. Patent No. 4,698,672 ("'672 Patent"). GI is no longer a co-owner of the '672 Patent. On September 30, 2004, GI assigned, conveyed and released to Compression Labs, Inc., a Delaware corporation ("CLI"), all of its entire right, title and interest in and to '672 Patent, including the right to sue for and receive all past damages for infringement of the '672 Patent,, and is no longer a co-owner of the '672 Patent.

3.    GI has divested itself of all of its interest in the '672 Patent and disclaims all interest in the outcome of the pending controversies presently pending in the following actions or any actions hereafter filed relating in any respect to the infringement, validity or enforceability of the '672 Patent:

> *Compression Labs Inc. v. Dell, Inc., International Business Machines Corp., and Toshiba America, Inc.*, pending in U.S. District Court for the Eastern District of Texas, Marshall Division
>
> *Compression Labs Inc. v. Agfa Corporation, Apple Computer Inc., Axis Communications Inc., Canon USA Inc., Concord Camera Corp., Creative Labs Inc., Eastman Kodak Co., Fuji Photo Film USA Inc., Fujitsu Computer Products of America Inc., Gateway Inc., Hewlett-Packard Co., JASC Software, Inc., JVC Americas Corp., Kyocera Wireless Corp., Matsushita Electric Corp. of America, Mitsubishi Digital Electronics America Inc., Oce North America Inc., Onkyo USA Corp., PalmOne Inc., Panasonic Communications Corp. of America, Panasonic Mobile Communications Development Corp. of USA, Ricoh Corp., Riverdeep Inc. d/b/a Broderbund, Savin Corp., Thomson S.A., Xerox Corp., Thomson Inc.*, pending in U.S. District Court for the Eastern District of Texas, Marshall Division

*Agfa Corp., Dell Inc., Gateway Inc., Hewlett-Packard Co., JVC Americas Corp., Matsushita Electric Corp. of America, Mitsubishi Digital Elecs. Am. Inc., Oce North America Inc., PalmOne Inc., Ricoh Corp., Riverdeep Inc., Savin Corp., Thomson Inc., Apple Computer Inc., Axis Comms. Inc., Canon USA Inc., Eastman Kodak Co., Fuji Photo Film USA Inc., Fujitsu Computer Products of America Inc., International Business Machines Corp., JASC Software Inc., Toshiba America Consumer Products, LLC, Xerox Corp. v. Compression Labs Inc., Forgent Networks Inc., General Instrument Corp.,* pending in U.S. District Court for Delaware*

*Sun Microsystems, Inc. v. Compression Labs, Inc.,* pending in U.S. District Court for the Northern District of California, San Jose Division

*Yahoo Inc. v. Compression Labs, Inc., Forgent Networks Inc., General Instruments Corp.,* pending in U.S. District Court for Delaware

*Compression Labs, Inc. v. Acer America Corp., Audio Vox Corp., BancTec, Inc., BenQ America Corp., Color Dreams, Inc. d/b/a StarDot Technologies, Google, Inc., ScanSoft, Inc., TiVo Inc., Veo Inc., Yahoo! Inc., Sun Microsystems Inc.,* pending in U.S. District Court for the Eastern District of Texas, Marshall Division

*Google Inc. v. Compression Labs Inc., Forgent Networks Inc., General Instruments Corp.,* pending in U.S. District Court for the Northern District of California, Oakland Division

*AudioVox Corp., AudioVox Electronics Corp., BancTec Inc., ScanSoft Inc., TiVo Inc. v. Compression Labs Inc., Forgent Networks Inc., General Instrument Corp.,* pending in U.S. District Court for Delaware

4.    GI's absence from such pending or future litigation relating to the '672 Patent will not impair GI's ability to protect an interest relating to the subject of these pending or such future actions because it has assigned all interests to CLI and disclaims any interest to protect. As a result, there is no risk of any accused infringer being subjected to any action brought by GI under the '672 Patent or being subjected to any risk of incurring double, multiple or otherwise inconsistent obligations.

5.    Complete relief can be accorded to the parties involved in the litigation listed in paragraph 3 and/or involved in future litigation involving the '672 Patent without the joinder or continued joinder of GI because GI has divested itself of, and disclaims any and all interest in and to, the '672 Patent and in and to all royalties, damages and claims for damages by reason of past, present or future infringement or other unauthorized use of the '672 Patent.

6.    The foregoing statement is submitted under penalty of perjury and I hereby swear that the foregoing is true and correct to the best of my knowledge.


Date: *Oct. 8, 2004*

*Daniel M Moloney*

*Daniel M. Moloney*
[Printed Name of Affiant]


SUBSCRIBED AND SWORN TO BEFORE ME on this the *8th* day of *October*, 2004.

*Karen L. Degler*
Notary Public


My Commission Expires:

*3/5/2005*

Notarial Seal
Karen L. Degler, Notary Public
Horsham Twp., Montgomery County
My Commission Expires Mar. 5, 2005
Member, Pennsylvania Association of Notaries

# EXHIBIT 2

PATENT ASSIGNMENT

THIS PATENT ASSIGNMENT ("Assignment") is made and entered into as of this 6th day of October, 2004 ("Effective Date"), by and between General Instrument Corporation, a Delaware corporation, with its principal office at 101 Tournament Drive, Horsham, Pennsylvania 19044 ("Assignor"), and Compression Labs, Inc., a Delaware corporation, with its principal office 108 Wild Basin Road, Austin, Texas 78746 ("Assignee").

WHEREAS, Assignor owns a 50% undivided interest in, to and under U.S. Patent No. 4,698,672 (the "Patent"); and

WHEREAS, Assignee wishes to acquire and Assignor wishes to assign Assignor's entire right, title and interest in and to the Patent.

NOW, THEREFORE, for good and valuable consideration as hereinafter set forth, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby sell, assign, transfer and set over to Assignee, all of its right, title and interest in and to the Patent, for the United States and for all foreign countries, including any continuations, divisions, continuations-in-part, reissues, reexaminations, or foreign equivalents thereof, and including the subject matter of all claims which may be obtained therefrom for its own use and enjoyment, and for the use and enjoyment of its successors, assigns or other legal representatives, as fully and entirely as the same would have been held and enjoyed by Assignor if this Assignment and sale had not been made; together with all income, royalties, damages or payments due or payable as of the date hereof or thereafter, including, without limitation, all claims for damages by reason of past, present or future infringement or other unauthorized use of the Patent, with the right to sue for, and collect the same for its own use and enjoyment, and for the use and enjoyment of its

1

successors, assigns, or other legal representatives.

Assignor authorizes and requests the Commissioner of Patents and Trademarks to record Assignee as owner of the Patent, including any continuations, divisions, continuations- in-part, reissues, or reexaminations thereof, and to issue any and all letters patent of the United States thereon to Assignee, as assignee to the entire right, title and interest in, to and under the same, for the sole use and enjoyment of Assignee, its successors, assigns or other legal representatives.

Assignor shall provide Assignee, its successors, assigns or other legal representatives, cooperation and assistance at Assignee's request and expense (including the execution and delivery of any and all affidavits, declarations, oaths, exhibits, assignments, powers of attorney or other documentation as may be reasonably required): (1) in the prosecution or defense of any interference, opposition, reexamination, reissue, infringement or other proceedings that may arise in connection with any of the patent rights assigned herein, including, but not limited to, testifying as to any facts relating to the patent rights assigned herein and this Assignment; and (2) in the implementation or perfection of this Assignment.

Assignor's entire right, title and interest in and to and under the Patent are assigned "AS IS" and without any warranty of any kind, including without limitation warranties of title and non-infringement, validity or enforceability.

This Assignment shall be construed and governed in accordance with the laws of the State of Illinois without giving effect to laws concerning conflicts of laws.

This Assignment, together with the Agreement dated October 6, 2004 by and among the parties hereto, Forgent Networks, Inc. and Motorola, Inc. comprises the entire, final and exclusive understanding of the parties with respect to the subject matter herein and supersedes any previous agreement, whether oral or written, with respect to much subject matter.

2

IN TESTIMONY WHEREOF, the Assignor and Assignee have caused this Assignment to be signed and executed by the undersigned officers thereunto duly authorized this 6th day of October, 2004.

ASSIGNOR:

GENERAL INSTRUMENT CORPORATION

By: _Daniel M Moloney_

Name: _Daniel M. Moloney_

Title: _Pres. & CEO_

ASSIGNEE:

COMPRESSION LABS, INC.

By: _Richard Snyder_

Name: _RICHARD SNYDER_

Title: _PRESIDENT_

COMMONWEALTH OF PENNSYLVANIA
~~STATE OF ILLINOIS~~ §
                MONTGOMERY §
COUNTY OF ~~COOK~~ §

On this _8th_ day of October, 2004, there appeared before me _Daniel M. Moloney_ personally known to me, who acknowledged that he signed the foregoing Assignment as his voluntary act and deed on behalf and with full authority of General Instrument Corporation.

_Karen L. Degler_

Notary Public in and for the ~~State of Illinois~~ _Commonwealth of Pennsylvania_

Notarial Seal
Karen L. Degler, Notary Public
Horsham Twp., Montgomery County
My Commission Expires Mar. 5, 2005
Member, Pennsylvania Association of Notaries

STATE OF TEXAS       §
                     §
COUNTY OF TRAVIS     §

On this _6th_ day of October, 2004, there appeared before me _Richard Snyder_, personally known to me, who acknowledged that he signed the foregoing Assignment as his voluntary act and deed on behalf and with full authority of Compression Labs, Inc.

Notary Public in and for the State of Texas



JAMES S GRAHAM
Notary Public
STATE OF TEXAS
My Comm. Exp. July 28, 2008

4

# EXHIBIT 3

...ties have been doing busi-
ne area for some time and
ve advertised extensively,
ces of actual confusion are
or entitled to great weight
ation. Indeed, the existence
lful of instances of actual
r a significant time or a
ree of concurrent sales un-
ive marks may even lead to
at no likelihood of confu-
ations omitted).
l F.2d at 1110.
ls that plaintiff's affidavits
raise a genuine question of
as to preclude summary
ffidavits presented by SSI
ate that an alleged factual
r summary judgment pur-
must be material and genu-
ffidavits do not meet this
re insufficient to show that
ld prevail on this claim if
d to a jury.

Channels Used

employ similar marketing
te their products. Further,
ell to the same target mar-
rimarily on in-house sales-
s product through distribu-
nt representatives. SSI and
ng material to market their
ompanies sell their instru-
physicians and hospitals.
s that the marketing chan-
arties are similar and such
es the possibility of confu-
SSI and Boss products.

;ree of Purchaser Care and

narket their products to a
tomer base — health care
onsible for purchasing sur-
The Court finds that a
ner of surgical instruments
ely to be confused by any
between SSI's trade dress
dress.

he Defendant in Selecting

ses a mark with the intent
ion, that fact alone may be
y an inference of confusing
t 1111 (citing *Wynn Oil*,
. In creating its promotion-
s hired the same graphics

---

designer that SSI employed to develop its
promotional materials. Boss also now incor-
porates the phrases, "Fine Touch" and "The
Art of Surgery" throughout its promotional
literature. SSI previously used these terms in
a 1990 supplemental catalog for Ultra oph-
thalmic instruments.

There are some similarities between Boss's
trade dress and that of SSI; however, SSI has
not demonstrated that the defendants chose
these elements of its trade dress to cause
confusion. In fact, because Boss has utilized
these phrases consistently throughout its
marketing materials including its catalogs
and packaging, Boss has attempted to distin-
guish its trade dress from that of SSI.

(viii) Likelihood of Expansion of the Prod-
uct Lines

*Homeowner* examines the circumstance in
which the products are not competitive or
closely related, reasoning that a "'strong
possibility' that either party will expand his
business to compete with the other . . . will
weigh in favor of finding that the present use
is infringing." *Id.*, 931 F.2d at 1112 (citing
Restatement of Torts § 731(b) & cmt. c
(1938)). By extension, the Court will apply
this analysis in the present case in which the
products are competitive and closely related.

The Restatement of Torts explains that
trade dress protection is limited to those
cases in which there is a probability of confu-
sion of prospective purchasers and states the
relevant test as follows: "The issue in each
case is whether the goods . . . of the actor and
of the other are sufficiently related so that
the alleged infringement would subject the
good-will and reputation of the other's trade-
-mark or trade name to the hazards of the
actor's business." Restatement of Torts,
§730 cmt. b (1938).

SSI asserts that it is likely to expand the
Ultra line. Boss has not indicated its inten-
tion to expand its product lines. Presently,
SSI and Boss compete in the same market.
Whether Boss will expand its product line in
a way similar to SSI remains unclear. As-
suming that Boss expands its product line,
the Court does not find such expansion indic-
ative of infringement because the likelihood
of consumer confusion is not significant.

[3] Based on the analysis of the above
factors, the Court rules that the relevant
consumers are unlikely to confuse SSI's
product with Boss's product. Notwithstand-
ing the relatedness of the products, some
similarities of the marks, and the similarities
of the marketing channels used, these factors
are outweighed by the weakness of plaintiff's
mark, the high degree of purchaser care and

sophistication, and the presence of the logos
of both Boss and SSI on the respective ele-
ments of their trade dress. Further, plain-
tiff's evidence of actual confusion is not of
substantial weight in this analysis and SSI
has failed to demonstrate that Boss intended
to cause confusion through its choice of trade
dress.

IV. CONCLUSION

The Court finds that SSI has not met its
burden of presenting a genuine issue of mate-
rial fact with respect to the three elements
required under the Lanham Act. The Court
concludes that SSI's trade dress is ineligible
for protection under the Lanham Act and
this claim does not survive summary
judgment.

In entering a judgment for defendants
Phillips and Boss Instruments, the Court
finds that a reasonable jury would be unable
to return a verdict for the non-moving party.
Because the record taken as a whole could
not lead a rational trier of fact to find for the
non-moving party, there is no genuine issue
for trial. *Street v. J.C. Bradford & Co.*, 886
F.2d at 1478.

For the reasons set forth above, the Court
grants the defendants' motion for partial
summary judgment and dismisses with prej-
udice plaintiff's trade dress infringement
claim and dismisses without prejudice the
plaintiff's pendent state law claims. An Or-
der consistent with the foregoing reasoning
will be entered contemporaneously with this
Memorandum.

---

**District Court, N.D. California**

International Business Machines Corp. v.
Conner Peripherals Inc.

No. C 93 20591 RMW

Decided January 28, 1994

PATENTS

1. Title — Assignments (§150.03)

JUDICIAL    PRACTICE    AND
PROCEDURE

Procedure — Parties; standing (§410.07)

Japanese corporation which was assigned
patent in suit jointly with defendant, but
which, pursuant to side agreement with de-
fendant, has no right to sue any infringer,
even if defendant refuses to do so, is not

indispensable party to defendant's infringement counterclaim, since plaintiff does not face substantial risk of incurring multiple or inconsistent obligations.

### Particular patents — Electrical — Computer disk drives

4,933,785, Morehouse, Andrews, Blagaila, Furay, and Johnson, disk drive apparatus using dynamic loading/unloading, accused infringer's motion to dismiss for failure to join indispensable party denied.

---

Action by International Business Machines Corp. against Conner Peripherals Inc., for declaratory judgment of patent invalidity and non-infringement, in which defendant counterclaims for patent infringement. On motion by plaintiff to dismiss infringement counterclaim. Motion denied.

Patrick Lynch, Robert E. Willett, and Mark A. Samuels, of O'Melveny & Myers, Los Angeles, Calif.; David J. Cushing, of Sughrue, Mion, Zinn, Macpeak & Seas, Washington, D.C.; Anthony L. Clapes, White Plains, New York, for IBM Corp.

Paul H. Heller and Philip J. McCabe, of Kenyon & Kenyon, New York, New York; Martin S. Fleisler and Mark E. Miller, of Fleisler, Dubb, Meyer & Lovejoy, San Francisco, Calif.; Marla A. Stark, San Jose, Calif.; Michael A. Ladra, Peter N. Detkin, Michael Barclay, and Sandy L. Roth, of Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Calif., for Conner Peripherals Inc.

**Whyte, J.**

Counterclaim defendant International Business Machines Corporation's ("IBM") motion to dismiss counterclaim plaintiff Conner Peripheral's ("Conner") second counterclaim was heard on January 7, 1994. The court has read the moving and responding papers and heard the oral argument of counsel. The court has also considered the stipulation filed by Alps Electric Co., Ltd. ("Alps") and the parties' comments relating thereto. For the reasons set forth in this opinion, the court denies defendant's motion.

## I. BACKGROUND

On August 11, 1993, IBM filed a complaint against Conner seeking declaratory relief. IBM did not name Alps as a defendant in that complaint. In the eleventh claim for relief, IBM seeks a judicial declaration that the U.S. Patent No. 4,933,785 (the Morehouse '785 patent) is invalid and/or not infringed.

On September 27, 1993, Conner filed its answer to IBM's complaint as well as a number of counterclaims. The second counterclaim alleged infringement by IBM of the Morehouse '785 patent. Conner did not join Alps as a party. On October 5, 1993, IBM answered Conner's counterclaim. IBM did not raise failure to join an indispensable party as an affirmative defense, nor did IBM concurrently file a motion to dismiss under Rule 12(b)(7). On November 12, 1993, IBM moved to dismiss Conner's second counterclaim for failure to join Alps as an indispensable party.

On May 29, 1992 Prairietek Corporation, a debtor in a Chapter 11 case, assigned the Morehouse '785 patent and several other patents to Conner Peripherals jointly with Alps, a Japanese corporation. Another instrument, an Asset Purchase Agreement dated March 20, 1992, confers rights in the Morehouse '785 patent to Alps, Conner, and Alps Electric U.S.A.[1]

On April 2, 1992 Conner Peripherals and Alps signed a side agreement. Paragraph 6 of that agreement provides that Alps and Conner would acquire the Morehouse '785 patent as well as other patents from Prairietek "such that title to such patents shall be held by [Conner] and [Alps] as joint owners". The side agreement also provides in pertinent part:

> [I]t is agreed that Conner shall have the following exclusive rights with respect to the Patents, which it shall be entitled to exercise in its sole discretion without any duty of consultation with Alps: (i) the exclusive right to enter, negotiate and grant licenses and sublicenses ... (ii) the exclusive right to prosecute continuations of the patents and any and all patent applications ... (iii) the exclusive right to enforce, refrain from enforcing, compromise and settle any claim of infringement by any third party and to manage and determine the cost of such actions ... (iv) ... the exclusive right to receive all payments and cross licenses from any such transactions and (v) the right to assign or transfer its interests in any or all of the patents provided that the assignee shall become bound by the terms of this Section 5.

Therefore, pursuant to this agreement, Alps may not sue *anyone* for infringement of

---

[1] IBM does not seek to join Alps Electric, U.S.A. as an indispensable party at this time.

the Morehouse '785 patent and cannot force Conner to sue anyone for infringement. The agreement also prohibits Alps from offering licenses or sublicenses in any interest in the patent. In addition, Alps cannot prevent Conner from offering licenses or sublicenses in any interest in the patent and Alps is not free to assign its interest in the patent without Conner's consent.

During the pendency of the instant motion, a stipulation was filed wherein Alps confirmed its agreement with Conner and specifically acknowledged that it would be bound by the outcome of the lawsuit and that it has no right to independently litigate any rights under the '785 patent against IBM or Western Digital or their customers or their licensees under the '785 patent.

IBM moves to dismiss Conner's second counterclaim pursuant to Rule 12(b)(7) and 19 of the Federal Rules of Civil Procedure because IBM contends that Alps is an indispensable party to Conner's second counterclaim. IBM argues that it cannot be assured of full and complete adjudication of its rights and liabilities with regards to the Morehouse '785 patent in Alps' absence from this litigation. IBM also states that the court cannot make any ruling as to Alps' ownership interest in the Morehouse '785 patent that would bind Alps in any subsequent litigation because Alps is not before the court. IBM cites *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329 [169 USPQ 513] (1971) for the proposition that litigants may not be collaterally estopped if "[t]hey never had a chance to present their evidence and arguments on a claim." IBM, therefore, argues that it can only be assured protection against multiple litigation if the motion is granted.

Conner contends that the motion to dismiss must be denied because 1) IBM's motion to dismiss is untimely; 2) Alps is not an indispensable party since it is, in effect, a licensee of the Morehouse '785 patent who does not have standing to sue IBM for infringement of the '785 patent; and 3) Alps' stipulation should remove any concern IBM has as to the potential for a subsequent suit by Alps.

## II. LEGAL STANDARDS

Fed. Rule Civ. Pro. 19 sets forth the conditions under which a person must be joined in a suit for that action to proceed. Rule 19(a) provides:

Joinder of Persons Needed for Just Adjudication
(a) Persons to Be Joined if Feasible.

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

All co-owners of a patent must join in bringing a suit for infringement. Chisum, *Patents*, §21.03[3], 21-295. In *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891) the court stated that patent owners have standing to sue for patent infringement, but licensees do not have standing to sue on their own. Since all co-owners have standing to sue for infringement, if all the co-owners are not joined in an infringement suit, there may be a risk that the defendant will be subject to multiple suits. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 [20 USPQ2d 1045] (Fed. Cir. 1991) (policy underlying requirement of joining owners is to prevent possibility of two suits against a single infringer.) When one co-owner sues for patent infringement, the court will find the non-joined co-owner indispensable to protect a defendant from the "justifiable fear that should [it] prevail and the court determine that the patent in suit is either invalid or not infringed, the remaining joint owners might still relitigate these issues at a later date in another costly and vexatious proceeding." *Willingham v. Star Cutter Co.*, 555 F.2d 1340, 1345 [194 USPQ 249] (6th Cir. 1977). Co-owners may avoid the inconvenience or undesirability of the joinder rule by structuring their interests so that one party is no longer in law an "owner". *Rawlings v. National Molasses Co.*, 394 F.2d 645 [158 USPQ 74] (9th Cir. 1968); Chisum, *Patents*, §21.03 [3] [d], 21-296, n. 23.

This court will consider plaintiff's motion with these standards in mind.

## III. ANALYSIS
### A. Is the motion timely?

Conner argues that IBM's motion to dismiss must be denied because it was not made in either a pre-answer motion under Rule 12(b)(7) or in the answer itself. IBM filed an answer to Conner's second counterclaim on October 5, 1993. IBM filed this motion to dismiss on November 12, 1993.

Rule 12(h)(2) preserves the defense of failure to join an indispensable party under Rule 19: "A defense of . . . failure to join an indispensable party under Rule 19 . . . may be made in any pleading permitted or ordered under Rule 7(1), or by motion for judgment on the pleadings, or at the trial on the merits." One does not waive the defense of failure to join an indispensable party by filing a responsive pleading. The failure to join an indispensable party can be raised at any time. *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960); *CP Nat. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911-12 (9th Cir. 1991), ("[t]he issue [of failure to join an indispensable party] can be properly raised at any stage in the proceedings.")

Therefore, IBM's motion is timely made.

### B. Is Alps an indispensable party?

IBM contends that Alps is an indispensable party because it is a joint owner of the Morehouse '785 patent. IBM points to 1) the assignment of patent rights from Prairietek that lists Conner and Alps as joint assignees and 2) the Asset Purchase Agreement between Prairietek, Conner and Alps that confirms that Conner and Alps jointly purchased from Prairietek the Morehouse '785 patent (together with several other patents). IBM argues that as patent co-owners, Conner and Alps fall into what the Supreme Court in *Waterman* describes as the "second case".

In *Waterman*, the court states:

> The patentee or his assigns may, by instrument in writing, assign, grant, and convey either, 1st, the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or, 2d, an undivided part or share of that exclusive right; or, 3d, the exclusive right under the patent within and throughout a specified part of the United States [citation omitted]. A transfer of either of these three kinds of interests is an assignment properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue for infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone. Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement. [citation omitted].

*Waterman, supra*, 138 U.S. at 255.

IBM states that since *Waterman*, courts have held that all patent co-owners (the second case in *Waterman*) are indispensable parties under Rule 19 in suits for patent infringement. *Willingham v. Star Cutter Co.*, 555 F.2d 1340, 1343 [194 USPQ 249] (6th Cir. 1977); *Switzer Bros. Inc. v. Byrne*, 242 F.2d 909, 912 [113 USPQ 168] (6th Cir. 1957); *Hurd v. Sheffield Steel Corp.*, 181 F.2d 269, 271 [85 USPQ 147] (8th Cir. 1950).

In opposition, Conner states that Alps does not fall under the second case in *Waterman*. Citing *Gayler v. Wilder*, 51 U.S. 477, 493 (1850), Conner contends that it is not a co-owner because Alps is not on an equal footing with Conner. In *Gayler*, the court stated that "a patentee may assign his whole interest, or an undivided part of it. But if he assigns a part under this section, it must be an *undivided* portion of his *entire* interest under the patent, placing the assignee upon an *equal footing* with himself for the part assigned." Conner argues that since the Conner-Alps agreement does not give Alps the right to sue or to transfer, Alps does not have an undivided interest in these rights, and is, therefore, not an assignee, or owner of the patent and, therefore, not an indispensable party.

Conner further argues that there is no risk of multiple litigation, or even the possibility of litigation by Alps against IBM, because an entity that is prohibited by contract from suing for patent infringement lacks standing to bring such a suit.

In opposition, IBM argues that the Conner-Alps side agreement fails to provide assurance that there is no risk of multiple litigation. IBM cites *Willingham v. Star Cutter Co.*, 555 F.2d 1340 [194 USPQ 249] (6th Cir. 1977) and *Valutron, N.V. v. NCR Corp.*, 99 F.R.D. 254 [218 USPQ 1009] (S.D. Ohio 1982) for the proposition that requiring that all patent co-owners join in an action for infringement is not avoided by agreements allocating amongst a patent's owners the right to sue for infringement.

In *Star Cutter*, a patent co-owner sued a third party for patent infringement. The co-owner had a written agreement providing that either could sue for infringement in its sole discretion if the other refused or failed to join in the suit. The Sixth Circuit held that, notwithstanding the agreement, involuntary joinder was proper to protect the defendant's

justifial 1345.

In *Va* patent u ability patent. could no ten cons the min ney aut agreed t held tha that dis nority o voluntar plaintiff

In op *Cutter* risk of ment in multiple ner con with all Conner *Visa U!* Cal. 19 to mak constitu that an must be patente in the tained s at 2027 unfetter patent i ee an as *Vaupel Euro 1* USPQ2 strate t to sue ir assignee

IBM are irre circums standin cases tu grants includir ers. If s has star *supra*, { standing *Chemic* USPQ2 *Pittway* (N.D. C *USA In* Cal. 19 inappos involve

s a mere license,
e in the patent,
, in his own name
tion omitted].
S. at 255.

*tterman,* courts
 co-owners (the
re indispensable
suits for patent
*v. Star Cutter*
194 USPQ 249]
*s. Inc. v. Byrne,*
Q 168] (6th Cir.
*teel Corp.,* 181
 147] (8th Cir.

lates that Alps
d case in *Water-*
*r,* 51 U.S. 477,
s that it is not a
iot on an equal
*tyler,* the court
assign his whole
t of it. But if he
:tion, it must be
: entire interest
e assignee upon
elf for the part
at since the Con-
it give Alps the
ps does not have
ie rights, and is,
or owner of the
m indispensable

t there is no risk
n the possibility
t IBM, because
by contract from
t lacks standing

:s that the Con-
is to provide as-
isk of multiple
*ngham v. Star*
194 USPQ 249]
*n, N.V. v. NCR*
8 USPQ 1009]
proposition that
wners join in an
not avoided by
ngst a patent's
nfringement.

co-owner sued a
ingement. The
ement providing
ringement in its
fused or failed to
:ircuit held that,
ent, involuntary
t the defendant's

justifiable fear of multiple litigation. *Id.* at 1345.

In *Valutron,* several minority owners of a patent signed an agreement restricting their ability to license, enforce, and assign the patent. *Id.* at 256. The minority owners could not enforce the patent except on written consent of the majority owners. Although the minority owners signed powers of attorney authorizing the infringement suit and agreed to be bound by any decision, the court held that *Star Cutter* was dispositive and that dismissal was required because the minority owners had neither joined in the suit voluntarily nor been joined as involuntary plaintiffs.

In opposition, Conner argues that *Star Cutter* is distinguishable because there was a risk of multiple litigation despite the agreement in *Star Cutter* while there is no risk of multiple litigation in the instant case. Conner contends that *Valutron* is inconsistent with all the case law concerning ownership. Conner cites *Refac International Ltd. v. Visa USA, Inc.,* 16 U.S.P.Q.2d 2024 (N.D. Cal. 1990) for the proposition that the right to make, sell and lease is insufficient to constitute an assignment. The court stated that an agreement's substantive provisions must be analyzed to determine whether the patentee transferred substantially all rights in the patent or whether the patentee retained significant incidents of ownership. *Id.* at 2027. The court found that a transferee's unfettered right to transfer its interest in the patent is a prerequisite to finding a transferee an assignee. *Id.* at 2029. Conner also cites *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870 [20 USPQ2d 1045] (Fed. Cir. 1991) to demonstrate the overriding importance of the right to sue in determining whether an entity is an assignee.

IBM states that the cases cited by Conner are irrelevant because they deal with the circumstances under which a licensee has standing to sue. IBM contends that these cases turn on whether the license agreement grants all substantive rights in the patent including the sole right to sue alleged infringers. If so, the courts hold that the plaintiff has standing to sue for infringement. *Vaupel, supra,* 844 F.2d at 876. If not, plaintiff lacks standing to sue. *Calgon Corp. v. Nalco Chemical Co.,* 726 F.Supp. 983 [13 USPQ2d 1529] (D. Del. 1989); *Raber v. Pittway Corp.,* 23 U.S.P.Q.2d 1313, 1315 (N.D. Cal. 1992); *Refac Int'l Ltd. v. Visa USA Inc.,* 16 U.S.P.Q.2d 2024, 2029 (N.D. Cal. 1990). IBM argues that these cases are inapposite because the instant case does not involve standing, and there is no allegation

that Conner lacks standing. IBM contends that none of these cases stands for the proposition that a record owner of a patent who has given up the exclusive right to sue for infringement ceases to be a co-owner and therefore an indispensable party.

In opposition, Conner states that the issue is not whether Conner lacks standing but whether Alps lacks standing. If Alps lacks standing to sue, Conner argues, IBM's fear of multiple litigation is groundless. Moreover, Conner argues that, in cases such as *Vaupel,* the court determines whether the provisions of Rule 19(a) have "been transgressed". In *Vaupel* the court states:

This grant [of the right to sue] is particularly dispositive here because the ultimate question confronting us is whether Vaupel can bring suit on its own or whether Marowsky must be joined as a party. The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer. (citations omitted.) This policy is not undercut here because the right to sue rested solely with Vaupel. . . . The district court's decision and our affirmance thereof, assure that the provisions of [rule 19(a)] have not been transgressed: complete relief can be afforded among those already parties and there is no substantial risk of a party incurring double obligations.

944 F.2d at 875-76.

Citing *Vaupel, supra,* 944 F.2d at 874, IBM urges the court "to examine the substance of what was granted." IBM contends that Alps is a co-owner of the patent and that the side agreement did not change that substance. Therefore, IBM argues that Alps is an indispensable party under Rule 19.

The court finds IBM's argument unpersuasive. Co-owners may avoid "the inconvenience or undesirability of the joinder rule by structuring their interests so that one party is no longer in law an "owner". Chisum, *Patents,* §21.03[3], 21-296, n. 23 *citing Rawlings v. National Molasses Co.,* 394 F.2d 645 [158 USPQ 74] (9th Cir. 1968). In *Rawlings,* plaintiff and Feed Service were the joint owners of a patent. Feed Service assigned to plaintiff all of its rights in the patent, and plaintiff granted to Feed Service an unlimited, royalty free, non-exclusive, non-cancelable right to make, use and sell with a right to sublicense. Plaintiff brought suit for patent infringement. Defendants moved to dismiss the action contending that Feed Service was an indispensable party. The court held that Feed Service's right is not equivalent to an ownership right because

it includes no right to exclude others, which is the essence of the property interest in a patent. The court stated that "the common law and not the patent law gives an inventor the right to make, use and sell his invention. Patent law gives him the license to sue — the right to exclude others from using the invention. . . . [A]n owner of something less than monopoly rights may not sue for patent infringement." *Id.* at 647-48. The court found that "the absence of Feed Service as a party does not leave the defendants subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations (Fed.R.Civ.P. 19(a)(2)(ii)) because no matter what the outcome of this litigation there is no substantial risk of the defendants being troubled with actions brought by Feed Service. Feed Service has no capacity to sue strangers for infringement of the patent." *Id.* at 647.

According to the side agreement, confirmed by Alps's stipulation, Alps has no right to sue any infringers and cannot make Conner sue infringers. Alps does not have the right to sue an infringer even if Conner refuses to do so. Rule 19(a)(2)(ii) provides that joinder is necessary if "the person's absence . . . leave[s] any of the person's already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Alps' absence does not leave IBM subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. IBM argues that it might be subject to multiple litigation because Conner and Alps could alter the side agreement. This argument fails because IBM's fear is hypothetical. IBM has not shown that it faces a present threat of multiple litigation or inconsistent obligations.

[1] The court does not find IBM to be a necessary party because IBM does not face a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

## IV. ORDER

Counterclaim defendant's motion to dismiss counterclaim plaintiff's second counterclaim for failure to join an indispensable party is denied.

---

**District Court, N.D. Texas**

KPR Inc. v. C&F Packing Co. Inc.

No. 4:93-CV-243-Y

Decided November 24, 1993

**JUDICIAL    PRACTICE    AND PROCEDURE**

**1. Jurisdiction — Subject matter jurisdiction — Case or controversy (§405.0703)**

**REMEDIES**

**Non-monetary and injunctive — Declaratory judgments (§505.05)**

Federal district court has jurisdiction over action for declaratory judgment of patent invalidity and non-infringement, since defendant's correspondence with plaintiff, and its actions in filing suit against third parties, were sufficient to create reasonable apprehension in plaintiff that defendant would file infringement suit, and since plaintiff used defendant's patented process and apparatus in making its product, but court will not exercise such jurisdiction, since defendant followed through on its threats in timely fashion by filing suit in another jurisdiction and thus eliminated possibility that plaintiff would incur growing potential liability, and since plaintiff engaged in forum shopping, thus precluding application of "first-to-file" rule that would otherwise require court to proceed with plaintiff's first-filed declaratory action.

**JUDICIAL    PRACTICE    AND PROCEDURE**

**2. Jurisdiction — Venue; transfer of action — In patent actions (§405.1907)**

Action for patent infringement, transferred from another federal district court and consolidated in present forum with action for declaratory judgment of invalidity and non-infringement of same patents, will not be returned to transferor court, even though declaratory judgment action has been dismissed, since transferee court should accept ruling on transfer as law of case and not re-transfer absent impelling or unusual circumstances or manifestly erroneous transfer order, since transfer was not manifestly erroneous, since no unusual circumstances compel re-transfer, and since purpose of transfer has not been frustrated by unforeseen post-transfer events.

---

Action by KPR Inc. d/b/a Rosani Food against C&F Packing Co. Inc., for declaratory judgment that defendant's patents are invalid and not infringed, and that plaintiff is not in default under any of its three agreements with defendant, consolidated with ac-

30 USP...

tion by ...
infringe...
transfer...
Norther...
to stay...
judgmen...
denied;...
granted...

Jonatha...
Sude...
McGl...
Texas...

Raymon...
L. All...
of Nir...
Ill.; L...
Dalla...

**Mean...**

Pendi...
C&F P...
transfer...
dismiss...
d/b/a F...
filed in t...
on May...
of the...
KPR's a...
in suppo...
KPR's r...
Court pe...
fied surr...
letter, a...
finds tha...
tive moti...
the alter...
KPR's cl...
granted...
as to the...
the Unit...
Norther...
viously i...
ing on C...
lifted....

Plainti...
its princi...
Texas. D...
ration wi...
Elk Grov...
in the bu...
Italian sa...
manufact...
sage proc...
patents f...
of process...
On De...
three sep...

# EXHIBIT 4

Westlaw.

Not Reported in F.Supp.2d
2003 WL 22064257 (S.D.N.Y.)
(Cite as: 2003 WL 22064257 (S.D.N.Y.))

Ⓗ Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

E-Z BOWZ, L.L.C., Plaintiff,
v.
PROFESSIONAL PRODUCT RESEARCH CO.,
INC., Defendant.
PROFESSIONAL PRODUCT RESEARCH CO.,
INC., Third-Party Plaintiff,
v.
Deborah Lea CAVENDER, et al., Third-Party
Defendants.

**No. 00 Civ.8670 LTS GWG.**

Sept. 5, 2003.

*REPORT AND RECOMMENDATION*

GORENSTEIN, Magistrate J.

*1 Defendant Professional Product Research Co., Inc. ("PPR") moves this Court pursuant to Fed.R.Civ.P. 12(b)(7) to dismiss the complaint filed by plaintiff E-Z Bowz, LLC ("E-Z Bowz") for failure to join an indispensable party under Fed.R.Civ.P. 19. The Court has issued separate Report and Recommendations today addressing the parties' various motions for summary judgment or partial summary judgment (the "Summary Judgment R & R") and the third party defendants' motion to dismiss PPR's third party complaint for lack of personal jurisdiction. The Summary Judgment R & R contains a complete description of the allegations in this case and its procedural history. Familiarity with that Report is assumed. This Report will provide only the background necessary for an understanding of the instant motion.

*I. BACKGROUND*

As reflected in the Summary Judgment R & R, E-Z Bowz brought this action against PPR asserting patent infringement and related trade dress and unfair competition claims alleging infringement by PPR of two patents: U.S. Patent No. 5,617,979 (the " '979 Patent") and U.S. Patent Design No. 389,998 (the " '998 Patent"). Both the original and amended complaint--as well as the motion being considered in this Report and Recommendation--were filed in the United States District Court for the Eastern District of Tennessee. The action was thereafter transferred to this Court on motion by PPR.

A. *The '979 and '998 Patents*

During the course of the application for the '979 Patent, Deborah L. Cavender included Tina Lucille Benton Slater as a co-inventor. *See* Affidavit of Deborah L. Cavender, dated February 13, 1997 (reproduced in Memorandum in Support of Defendant's Motion to Dismiss Under Rule 12(b)(7) for Failure to Join an Indispensable Party Under Rule 19, F.R.C.P., filed March 21, 2000 ("PPR Mem."), Ex. C), ¶ ¶ 1, 6-7. When the '979 Patent was issued to Deborah L. Cavender on April 8, 1997, however, Cavender was listed as the sole inventor. *See* United States Patent, dated April 8, 1997 (PPR Mem ., Ex. B). After suit was filed, the United States Patent and Trademark Office ("USPTO") granted Cavender's petition to add Slater as a co-inventor on the '979 Patent. *See* Decision on Petition under 37 CFR 1.324, undated (reproduced in E-Z Bowz' Response to PPR's Statement of Material Undisputed Facts, filed February 6, 2003, Ex. C).

On August 1, 1997, Slater signed a document in which she transferred to Cavender "her entire right, title, and interest in [the '979 Patent], including the right to sue for past, present or future infringements thereof." *See* Transfer of Rights to Patent, dated August 1, 1997 (" '979 Transfer") (reproduced in Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Under Rule 12(b)(7) for Failure to Join an Indispensable Party Under Rule 19, filed April 7, 2000 ("E-Z Bowz Mem."), Ex. B). Thereafter, on January 25, 1999, Cavender assigned "all of her right, title and interest throughout the world in and to [the '979 Patent], the subject matter disclosed in the patent, and any and all prior, current, or pending rights of action therein" to E-Z Bowz. *See* Assignment, dated January 25, 1999 (reproduced in E-Z Bowz Mem., Ex. D).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 22064257 (S.D.N.Y.)
(Cite as: 2003 WL 22064257 (S.D.N.Y.))

Page 2

*2 The '998 Patent was issued on February 3, 1998 to both Cavender and Slater. *See* United States Patent, dated February 3, 1998 (reproduced in PPR Mem., Ex. A). On January 25, 1999, Cavender assigned "all of her right, title and interest throughout the world in and to [the '998 Patent], the subject matter disclosed in the patent, and any and all prior, current, or pending rights of action therein" to E-Z Bowz. *See* Assignment, dated January 25, 1999 (reproduced in E-Z Bowz Mem., Ex. J).

On October 14, 1999--after E-Z Bowz commenced the action against PPR--Slater entered into an agreement by which she assigned to E-Z Bowz her "entire right, title and interest" in the '979 and '998 Patents and "any and all prior, current, or pending rights of action therein." *See* Assignment, dated October 14, 1999 ("Oct. 14 Assignment") (reproduced in E-Z Bowz Mem., Ex. H). This assignment was recorded in the USPTO on October 25, 1999. *See* United States Patent and Trademark Office Notice of Recordation of Assignment Document, dated January 24, 2000 (reproduced in E-Z Bowz Mem., Ex. I).

B. *The Instant Motion*

On March 21, 2000, PPR moved to dismiss the complaint for failure to join an indispensable party. PPR argues that E-Z Bowz "was not 'the owner' of the entire right, title and interest to the patents in suit when the Complaint was brought." PPR Mem. at 1. According to PPR, the '979 and '998 Patents were in fact owned by both E-Z Bowz *and* Slater at the time E-Z Bowz filed the complaint in this action. PPR Mem. at 1-2. PPR appears to concede, however, that Slater assigned her interest in both patents to E-Z Bowz after the infringement action was filed. *See* PPR Mem. at 2-3.

E-Z Bowz argues in response that i) it did possess the '979 and '998 Patents at the time this action was commenced and ii) even if it was not in possession of both patents at that time, Slater is not an indispensable party under Rule 19 given that she assigned her "entire right, title and interest" in both patents in October 1999. *See* E-Z Bowz Mem. at 1-9. Because the latter argument disposes of the motion, it is unnecessary to consider the first argument.

II. *DISCUSSION*

A. *Applicable Law*

"Fed.R.Civ.P. 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party." *Viacom Int'l, Inc. v. Kearney,* 212 F.3d 721, 724 (2d Cir.), *cert. denied,* 531 U.S. 1051 (2000). At the first step, the court must determine if the party sought to be joined "belongs in the suit, *i.e.,* whether the party qualifies as a 'necessary' party under Rule 19(a)." *Id.* (citing *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 124 (1968)) (emphasis in original). Rule 19(a) states in relevant part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

*3 If the court makes a threshold determination that a party is necessary under Rule 19(a), and joinder is not feasible, the court must proceed to the second step and determine whether the party is "indispensable" under Rule 19(b). *See Viacom,* 212 F.3d at 725.

Rule 19(b) provides that:

If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

If, however, the party does not "qualify as necessary under Rule 19(a), then the court need not decide whether [the party's] absence warrants dismissal under Rule 19(b)." *Viacom,* 212 F.3d at 724 (citing *Associated Dry Goods Corp. v. Towers Fin. Corp.,* 920 F.2d 1121, 1123 (2d Cir.1990)).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 22064257 (S.D.N.Y.)
(Cite as: 2003 WL 22064257 (S.D.N.Y.))

Page 3

PPR argues that Slater is "necessary" under Rule 19(a)(2)(ii) because the filing of this suit "by less than all the owners of the patent could subject defendant to multiple, and perhaps inconsistent, liability for alleged infringement by each of the patent owners, and deprives the court of any jurisdiction over the action." PPR Mem. at 3.

B. *Whether Slater is an Indispensable Party*

"Traditionally, co-owners of a patent were considered indispensable parties in a patent infringement action." *See Michaels of Oregon Co. v. Mil-Tech, Inc.,* 1995 WL 852122, at *1 (D.Or. Oct. 17, 1995) (citing *Waterman v. Mackenzie,* 138 U.S. 252, 255 (1891)). The logic of this rule was that because "all co-owners have standing to sue for infringement, if all the co-owners are not joined in an infringement suit, there may be a risk that the defendant will be subject to multiple suits." *Int'l Bus. Mach. Corp. v. Conner Peripherals, Inc.,* 1994 WL 409493, at *3 (N.D.Cal. Jan. 28, 1994) (citation omitted); *accord Michaels of Oregon,* 1995 WL 852122, at *1 (citations omitted).

Since the introduction of Fed R. Civ. P. 19 and the 1966 amendments to the rule, however, "courts are less concerned with abstract characterizations of the parties and more concerned with whether the rights of the parties can be fairly adjudicated absent joinder of a patent co-owner." *Michaels of Oregon,* 1995 WL 852122, at *2 (citations omitted); *accord Parkson Corp. v. Fruit of the Loom, Inc.,* 1992 WL 541570, at *3 (E.D.Ark.1992) ("the adoption of the 1966 amendment to Rule 19 of the Federal Rules of Civil Procedure makes clear that patent owners are not *per se* indispensable parties in infringement actions") (emphasis in original); *Howes v. Med. Components, Inc.,* 698 F.Supp. 574, 576 (E.D.Pa.1988) ("the adoption of the 1966 amendments to Rule 19 'makes inappropriate any contention that patent co-owners are *per se* indispensable in infringement suits' ") (quoting *Catanzaro v. Int'l Tel. and Tel. Corp.,* 378 F.Supp. 203, 205 (D.Del.1974)) (citations omitted) (emphasis in original).

*4 The Supreme Court in *Provident Tradesmens Bank & Trust Co.,* observed:
The decision whether to dismiss (i.e., the decision whether the person missing is "indispensable") must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing

interests. Rule 19 does not prevent the assertion of compelling substantive interests; it merely commands the courts to examine each controversy to make certain that the interests really exist. To say that a court "must" dismiss in the absence of an indispensable party and that it "cannot proceed" without him puts the matter the wrong way around: a court does not know whether a particular person is "indispensable" until it ha[s] examined the situation to determine whether it can proceed without him.
390 U.S. at 118-19. The modern approach thus " 'requires courts to face squarely the pragmatic substantive and procedural considerations which properly should be controlling in determining whether a party is needed for the just adjudication of a case.' " *Howes,* 698 F.Supp. at 577 (quoting *Tycom Corp. v. Redactron Corp.,* 380 F.Supp. 1183, 1186 (D.Del.1974)).

PPR argues that "[i]t is hornbook law that all of the owners of the entire right, title and interest in the patent(s) must be present before the court as plaintiffs or the court lacks jurisdiction and the case must be dismissed." PPR Mem. at 3 (citing *Waterman,* 138 U.S. at 252; *Moore v. Marsh,* 74 U.S. 515 (1869); *Switzer Bros., Inc. v. Byrne,* 242 F.2d 909 (6th Cir.1957)). As noted above, however, Slater is no longer an "owner" as she assigned her interest in the '979 and '998 Patents to E-Z Bowz after commencement of the present action. *See* Oct. 14 Assignment; *cf. Int'l Bus. Mach. Corp.,* 1994 WL 409493, at *3, *6 ("Co-owners may avoid the inconvenience or undesirability of the joinder rule by structuring their interests so that one party is no longer in law an 'owner.' ") (citations omitted).

PPR nonetheless contends that "[t]he fact that [Slater] ... quitclaims, or conveys by assignment, her interest to the patents-in-suit *after* filing of the Complaint cannot give the court jurisdiction over the action as jurisdiction depends upon the state of things existing at the time suit was brought." PPR Mem. at 3 (emphasis in original). PPR does not, however, articulate any reason why the status of the parties at the time of the filing of suit should be of any significance for purposes of the Rule 19 analysis.

Here, Slater's absence will not result in a situation where "complete relief cannot be accorded among those already parties." Fed.R.Civ.P. 19. Nor does Slater any longer "claim[ ] an interest relating to the subject of the action." *Id.* The remaining requirements of Rule 19(a) also are not met. The litigation will not "impair or impede" Slater's ability

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 22064257 (S.D.N.Y.)
(Cite as: 2003 WL 22064257 (S.D.N.Y.))

Page 4

to protect her interests since she no longer has any interest in this litigation. Finally, PPR will in no way be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" inasmuch as Slater no longer has an interest or any right to sue for infringement. *See Int'l Bus. Mach. Corp., 1994 WL 409493, at *6-*7* (rejecting argument that party moving to dismiss for failure to join indispensable party was subject to multiple or inconsistent obligations where agreement provided that the party sought to be joined did not hold the right to sue infringers). Nothing in the language of Rule 19 suggests that Slater's subsequent assignment requires that she be dragooned into being part of a litigation in which she has disclaimed all interest.

*5 An analogous argument was advanced and rejected in *Procter & Gamble Co. v. Kimberly-Clark Corp., 684 F.Supp. 1403 (N.D.Tex.1987)*. The patent at issue in that case was held by Raychem, which granted plaintiff Procter & Gamble an exclusive license to the patent. *Id. at 1403-04.* Procter & Gamble then filed suit against defendant Kimberly-Clark for patent infringement, after which the defendant counterclaimed against Raychem asserting that it should be a party. *Id.* Sometime after the complaint was filed, Raychem assigned all its rights under the patent to Proctor & Gamble. *Id.* When Raychem moved to dismiss, the court rejected Kimberly-Clark's argument that the court "should consider the facts *as they existed at the time of filing suit* in determining whether Raychem was a proper party." *Id.* 1406 (emphasis in original). The court held that "even if Raychem owned the ... patent on the day suit was filed, dismissal was proper once the patent had been assigned." *Id.* at 1406- 07 (citing *Robert L. Ferman & Co. v. Gen. Magnaplate Corp., 33 F.R.D. 326, 329 (D.N.J.1963)* and *Irving Air Chute Co. v. Switlik Parachute & Equip. Co., 26 F.Supp. 329, 330 (D.N.J.1939)*). The court concluded that

[a] party which assigns all of its rights and interests under a patent should not be compelled to litigate an infringement action merely because it was the patent owner on the day suit was filed and for a few days thereafter. A party which divests itself of all of its interest in a patent does not have a sufficient stake in the outcome of the controversy to require that it remain a party. Any other result would exalt form over substance.

*Id.* at 1407. *See also Rawlings v. Nat'l Molasses Co., 394 F.2d 645, 647 (9th Cir.1968)* (rejecting argument that assignment of patent rights after litigation commenced made assignor an indispensable party because assignor's absence "does not leave the

defendants subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations"); *Valmet Paper Mach., Inc. v. Beloit Corp., 868 F.Supp. 1085, 1089 (W.D.Wis.1994)* (denying motion to dismiss for lack of standing where assignment conveying all rights in patent to plaintiff was executed after action was filed; to hold otherwise "would result in needless delay and needless expenditure of the parties' and the court's resources" for the plaintiff would "simply ... amend the complaint to add the assignor and then dismiss it as an unnecessary party, or simply ... reinstate the lawsuit").

While PPR cites one case that supports its position, *Switzer Bros., Inc. v. Byrne, 242 F.2d 909 (6th Cir.1957)*, the "precedential value [of *Switzer* ] must be doubted in light of more recent case authority holding that a patent's co-owner may not be an indispensable party to an infringement action if the shaping of relief can avoid any possible prejudice." *Proctor & Gamble Co., 684 F.Supp. at 1406* (citing *Windsurfing Int'l, Inc. v. Ostermann, 100 F.R.D. 82, 83-84 (S.D.N.Y.1983)*). *See generally Michaels of Oregon, 1995 WL 852122, at *2* (recent courts are "more concerned with whether the rights of the parties can be fairly adjudicated absent joinder of a patent co-owner") (citations omitted).

### Conclusion

*6 For the foregoing reasons, PPR's motion to dismiss for failure to join an indispenable party should be denied.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report to file any objections. *See also Fed.R.Civ.P. 6(a), (e).* Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Honorable Laura T. Swain, 40 Centre Street, New York, New York 10007, and to the undersigned at the same address. Any request for an extension of time to file objections must be directed to Judge Swain. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn, 474 U.S. 140 (1985)*.

2003 WL 22064257 (S.D.N.Y.)

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 22064257 (S.D.N.Y.)
**(Cite as: 2003 WL 22064257 (S.D.N.Y.))**

Page 5

Motions, Pleadings and Filings (Back to top)


•      1:00CV08670      (Docket)
(Nov. 14, 2000)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 5

Westlaw.

Not Reported in F.Supp.2d
2002 WL 31687610 (N.D.Ill.)
(Cite as: 2002 WL 31687610 (N.D.Ill.))

**H** Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.

BIOVAIL LABORATORIES, INC., a corporation of
Barbados, and TWFC, Inc., a
Delaware corporation, Plaintiffs,
v.
TORPHARM, INC., a Canadian corporation,
Defendant.

No. 01 C 9008.

Nov. 26, 2002.

*MEMORANDUM, OPINION AND ORDER*

ANDERSEN, J.

*\*1 This case is before the Court on the motion of plaintiff and counter-defendant TWFC, Inc. to dismiss it from this action for misjoinder pursuant to Federal Rule of Civil Procedure 21. For the following reasons, the motion to dismiss for misjoinder is granted.

BACKGROUND

Before 1991, the predecessor-in-interest of plaintiff TWFC, Inc. ("TWFC") received approval from the United States Food and Drug Administration ("FDA") to manufacture and sell a drug commonly known as Cardizem CD. This same predecessor-in-interest listed the following patents it owned in the FDA's book of Approved Drug Products With Therapeutic Equivalence Evaluations: Nos. 5,286,497; 5,439,689; and 5,470,584 (the "patents-in-suit"). On December 31, 2000, plaintiff Biovail Laboratories, Inc. ("Biovail") acquired from TWFC the beneficial rights to market Cardizem CD. Pursuant to an assignment agreement between TWFC and Biovail, Biovail was to become the legal owner of the patents-in-suit on December 31, 2001.

Before Biovail became the legal owner of the patents-in-suit, TorPharm, Inc. ("TorPharm") filed an Abbreviated Drug Application ("ANDA") to market a generic version of Cardizem CD. *See generally* *Biovail Labs., Inc. v. TorPharm, Inc.,* 2002 WL 1732372, at *1 (N.D.Ill. July 25, 2002). Because Biovail had not yet acquired the legal interest in Cardizem CD, it determined that TWFC needed to be joined as a plaintiff in the instant patent infringement action. On November 21, 2001, fewer than two months before legal ownership of the patents-in-suit vested in Biovail, the instant lawsuit was filed in this Court with Biovail and TWFC as co-plaintiffs.

After Biovail filed the patent infringement suit, but before TorPharm filed the declaratory judgment counterclaim against Biovail and TWFC, TWFC formally assigned its interests in the patents-in-suit to Biovail on December 20, 2001. Subsequently, TWFC filed the instant motion asserting that it should be dismissed from this action because it no longer had any interest in the patents-in-suit.

DISCUSSION

Federal Rule of Civil Procedure 21 provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. The primary purpose of Rule 21 is to cure situations in which parties have been misjoined. Typically, if a litigant is neither a proper nor an indispensable party, dismissal for misjoinder pursuant to Rule 21 is appropriate. *See* *Proctor & Gamble Co. v. Kimberly-Clark Corp.,* 684 F.Supp. 1403, 1407 (N.D.Tex.1987). What we must decide in this motion is whether TWFC's assignment of its interest in the patents-in-suit to Biovail nullifies its status as an indispensable party in this lawsuit. We conclude that it does.

It is well-settled that the owner of a patent is generally a necessary and indispensable party in an action charging an infringement of that patent. *See* *Shima American Corp. v. S.M. Arnold, Inc.,* 1989 WL 65014, at *2 (N.D. Ill. June 7, 1989); *Pure Food Products, Inc. v. American Bakeries Co.,* 176 U.S.P.Q. 233, 234 (N.D.Ill.1972). A corollary to this rule is that, "in the event of a complete assignment of title to a patent, only the assignee of the patent or the assignee's exclusive licensee has standing to claim protection rights under the patent." *Gilson v. Republic*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
2002 WL 31687610 (N.D.Ill.)
(Cite as: 2002 WL 31687610 (N.D.Ill.))

_of Ireland_, 606 F.Supp. 38, 41 (D.D.C.1984), _aff'd_ 787 F.2d 655 (D.C.Cir.1986); _see also Waterman v. MacKenzie_, 138 U.S. 252, 255, 11 S.Ct. 334 (1891); _Michod v. Walker Magnetics Group, Inc._, 115 F.R.D. 345, 346 (N.D.Ill.1987). So, if TWFC effected a complete assignment of its rights in the patents-in-suit to Biovail, then TWFC no longer has a sufficient interest in this case to justify its continuing presence as a co-plaintiff.

**\*2** However, in its response to the motion to dismiss, TorPharm has argued that the December 20, 2001 agreement between TWFC and Biovail did not constitute a complete assignment of its interest because TWFC purportedly retained certain rights in the patents following the agreement. We disagree. The rule for determining whether an agreement between two parties is an assignment (which transfers all rights to the assignee) or a license (in which the licensor retains substantial rights in the patents and, thus, is an indispensable party to a patent infringement suit) was announced by the Supreme Court in the _Waterman_ case. The Court stated: "Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." _Waterman_, 138 U.S. at 256; _see also Mentor H/S, Inc. v. Medical Device Alliance, Inc._, 240 F.3d 1016, 1017 (Fed.Cir.2001) ("[t]o determine whether an agreement constitutes just an exclusive license or instead also transfers 'all substantive rights' in a patent, we must ascertain the intention of the parties and examine the substance of what was granted by the agreement.").

In this case, the language of the agreement evidences a clear intent by TWFC to transfer all of its legal rights in the patents-in-suit to Biovail. Specifically, the agreement states that TWFC would "sell[ ], assign [ ], transfer[ ], convey[ ] and deliver to Assignee all of its legal right, title and interest in and to the Patents free and clear of all liens, claims, charges or encumbrances other than Permitted Encumbrances." In our estimation, this is an unequivocal declaration on TWFC's part that it intended to renounce all legal interest in the patents-in-suit and that title to the patents would vest in Biovail. Our view is consistent with many other courts which have similarly concluded that language, such as that present in the patent agreement, constituted an assignment. _See, e.g._, _Kronos, Inc. v. AVX Corp._, 1992 WL 300812, at \*1 (W.D .N.Y. March 12, 1992) ("[Kronos] agrees to sell, assign and transfer, and does hereby sell, assign and transfer, unto [TAM] the entire right, title and

interest of [Kronos] in and to each and all of the patents"); _Proctor & Gamble_, 684 F.Supp. at 1405 (concluding that "[t]he legal effect of the addendum is to assign Raychem's 'entire right, title and interest' in the Althouse patent"); _Irving Air Chute Co. v. Switlik Parachute & Equip. Co._, 26 F.Supp. 329, 330 (D.N.J.1939) ("Switlik Manufacturing Company has and by these presents does, sell, assign and transfer unto said Switlik Parachute & Equipment, its successors and assigns, the entire right, title, and interest in and to said Letters Patent aforesaid").

Nevertheless, TorPharm insists that, despite the definitive language of the agreement, TWFC retained a substantial interest in the patents-in-suit after the assignment agreement was executed. Specifically, TorPharm argues that the "Permitted Encumbrances" referenced in the text of the agreement provide TWFC with a residual interest in the patents. We disagree. Though the term "Permitted Encumbrances" is not defined in the assignment agreement, TWFC has provided a reasonable explanation of what these encumbrances are and what effect they have on the respective rights TWFC and Biovail have in the patents-in-suit. In its reply brief to the motion to dismiss, TWFC has asserted that the term "Permitted Encumbrances" refers to a "schedule of conditions-- preexisting third party rights and liabilities imposed by law--that Biovail acknowledged as being restrictions to the quanta of rights received under the agreement ... None of the conditions provide that TWFC shall retain any right or interest in the patents-in-suit." (Reply Brief at 3-4.) Based on this representation to the Court, we conclude that TWFC did not retain any meaningful interest in the patents-in-suit following the assignment agreement and that the intended effect of the agreement was for TWFC to transfer the entire bundle of its rights in the patents to Biovail. Therefore, TWFC is not an indispensable or necessary party to this lawsuit and it should be dismissed.

**\*3** The facts and legal issues presented in this case are almost identical to the _Proctor & Gamble_ case from the Northern District of Texas. In _Proctor & Gamble_, the defendant filed a counterclaim against Raychem Corporation, which had assigned its rights in the patent-in-suit to the plaintiff Proctor & Gamble, because it felt Raychem continued to have a financial and legal interest in the patent. 684 F.Supp. at 1404. Raychem moved to dismiss the counterclaim against it on the grounds that it no longer held an interest in the patent following the assignment of its rights to Proctor & Gamble. After determining that the patent agreement between Raychem and Proctor

2002 WL 31687610 (N.D.Ill.)
**(Cite as: 2002 WL 31687610 (N.D.Ill.))**

& Gamble was an assignment under the *Waterman* rule, the court granted Raychem's motion to dismiss. *See id.* at 1404-1406. Specifically, the court stated:

A party which assigns all of its rights and interests under a patent should not be compelled to litigate an infringement action merely because it was the patent owner on the day suit was filed and for a few days thereafter. A party which divests itself of all of its interest in a patent does not have a sufficient stake in the outcome of the controversy to require that it remain a party. Any other result would exalt form over substance.

*Id.* at 1407. Furthermore, the court faced a situation in which the patent agreement provided that the assignor would retain certain financial interests in the patent following assignment. In response to the defendant's argument that these financial interests negated the creation of an assignment, the court disagreed and stated that "[c]ourts have repeatedly held that an assignor's reservation of certain financial or other rights did not make the assignment incomplete or ineffective." *Id.* at 1405 (citing *Waterman,* 138 U.S. at 257-58).

The case before us is very similar to what the court faced in *Proctor & Gamble.* Both cases involve a patent infringement suit in which, at the time the suit was actually filed, an assignment agreement had not been fully executed. Consequently, the defendants in these two suits argued that the assignor of the patent was an indispensable and necessary party to the infringement action. Furthermore, both assignment agreements contained provisions which reserved some minor financial or legal interest in the patents to the assignor. Therefore, in evaluating the legal arguments raised by TorPharm in the case at bar, we find the court's reasoning in *Proctor & Gamble* very persuasive and we adopt it as our own. It is clear that TWFC has no stake in the underlying infringement suit between Biovail and TorPharm because it has no interest in the patents which are at issue. Accordingly, as in *Proctor & Gamble,* the assignor of the patent is dismissed.

Interestingly, it appears that the primary reason TorPharm wants TWFC in this suit is for discovery purposes. We are uncomfortable with the idea of keeping TWFC in this case only to facilitate TorPharm's discovery inquiries. After it is dismissed from this lawsuit, TWFC has agreed to cooperate with discovery under Federal Rule of Civil Procedure 45. Additionally, TWFC has agreed in its reply brief to answer depositions by written questions, accept service of all subpoenas, produce employees for depositions near or at their work-place, and produce

some witnesses for trial. This should be sufficient to provide TorPharm with the information it needs to defend against Biovail's infringement action.

CONCLUSION

**\*4** For the foregoing reasons, the plaintiff's motion to dismiss for misjoinder pursuant to Federal Rule of Civil Procedure 21 is granted. TWFC is hereby dismissed as a plaintiff in this action.

It is so ordered.

2002 WL 31687610 (N.D.Ill.)

Motions, Pleadings and Filings (Back to top)

- 1:01CV09008 (Docket) (Nov. 21, 2001)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.